## WESTERN UNION TELEGRAPH CO.
### v.
### THADDEUS FAIRBANKS ET AL.

1. TELEGRAPH COMPANIES, PROVISIONS BY.—Provisions of telegraph companies requiring the presentation of claims for damages within a specified time, and barring all claims not so presented, are valid.

2. QUESTION OF FACT AS TO WHAT IS PART OF THE CONTRACT.— Whether the printed matter on the blank of a telegraph company on which a message is written and signed by the sender, is a part of the contract or not, is a question of fact to be determined by the circumstances of the case: 60 Ill. 421.

3. PRINTED AGREEMENT—EVIDENCE ALIUNDE.—Where in the printed portion of the blank there were words expressing an agreement by the sender to the printed conditions, and a request that the message be sent subject thereto. *Held*, that if evidence *aliunde* is requisite to show the assent to and adoption by the sender of the form of contract printed on the blank, the same proof is necessary to establish his assent to and adoption as his own of the printed words by which he is made to agree to such proposed contract.

4. REASONABLE RULE—KNOWLEDGE OF SENDER.—While the rule of a telegraph company printed on the blank, requiring the presentation of claims within thirty days, being reasonable might be binding without the sender's assent, it would be necessary to show that the rule was brought home to the knowledge of the sender.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.    Opinion filed January 6, 1885.

This was an action on the case brought by Thaddeus Fairbanks and others, copartners under the firm name of Fairbanks, Morse & Co., against the Western Union Telegraph Com-

pany, to recover damages resulting from an erroneous transmission of a telegraphic message sent by the plaintiff's agent from Sioux Falls, Dakota Territory, to the Michigan Pipe Company, at Bay City, Michigan. It appears that on April 21, 1882, Morton Hull, the plaintiff's agent, had secured from the penitentiary commissioners at Sioux Falls, Dakota, an order for certain wooden pipe, and with a view to filling the order delivered to the defendant, for transmission, a night or half rate message, in the following words:

"SIOUX FALLS, DAKOTA, April 21, 1882.
"To Michigan Pipe Co.,
"Bay City, Michigan.
"Send at once five hundred and fifty feet two inch eighty pressure pipe to Dakota Territorial Penitentiary, Sioux Falls, Dakota, care Thomas H. Brown, Sec'y.
"MORTON HULL."

This message, as the evidence seems to show, was written by Hull on one of the ordinary half rate blanks of the defendant. These blanks are printed in red ink, and are conspicuously headed, "Night message." And after said heading is printed the following:

"The business of telegraphing is subject to errors and delays arising from causes which can not at all times be guarded against, including sometimes negligence of servants and agents whom it is necessary to employ. Errors and delays may be prevented by repetition, for which, during the day, half price extra is charged in addition to the full tariff rates.

"The Western Union Telegraph Company will receive messages to be sent without repetition during the night, for delivery not earlier than the morning of the next ensuing business day, at reduced rates, but in no case for less than twenty-five cents for a single message, and upon the express condition that the sender will agree that he will not claim damages for errors or delays, or for non-delivery of such messages happening from any cause, beyond a sum equal to ten times the amount paid for transmission, and that no claim for damages shall be valid unless presented in writing within thirty days after sending the message.

" Messages will be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance a special charge will be made to cover the cost of such delivery, the sender hereby guaranteeing payment thereof.

"The company will be responsible to the limits of its lines only, for messages destined beyond, but will act as the sender's agent to deliver the message to connecting companies or carriers, if desired, without charge and without liability."

"THOS. F. ECKERT, General Manager,

" NORVIN GREEN, President."

Following the above and to the left, and on the same line with the blank for the date of the message, are printed these words:

" Send the following night message, subject to the above terms, which are hereby agreed to."

At the bottom of the blank, in displayed type, are printed the following words:

" Read the notice and agreement at the top."

The price charged by the defendant for transmitting this message to Bay City was twenty-five cents, one half the usual rate, and this sum Hull seems to have paid. By some means, which the evidence fails to explain, the message, when received at Bay City, had become changed so as to read: " Send at once five hundred and fifty feet *five* inch eighty pressure pipe," etc., and in that form it was delivered to the Michigan Pipe Co. Pipe answering this erroneous description was shipped to Sioux Falls before the discovery of the error, but as it failed to answer the order given by the penitentiary commissioners, it was rejected and returned to the shippers, and this suit is brought to recover the amount of freight paid by the plaintiffs for carrying and returning it.

It was admitted at the trial that no claim in writing or otherwise was presented to the defendant, by or on behalf of the plaintiffs, for any damage in respect to said message, until some time in February, 1883, and that prior to that date, all the original papers relating to said message, including the original message itself, had been destroyed by the defendant,

in pursuance of its rule requiring the destruction of all messages after the expiration of six months from their date.

The cause was tried before the court below without a jury, and a judgment rendered in favor of the plaintiffs for $135.14 and costs, and from that judgment the defendant has appealed to this court.

Messrs. Williams & Thompson, for appellant; that the telegraph company is not liable, in view of the failure to present a claim within thirty days, cited Southern Ex. Co. v. Caldwell, 21 Wall. 264; U. S. Ex. Co. v. Harris, 51 Ind. 127; Lewis v. Great West. Ry. Co., 5 H. & N. 867; Weir v. Ex. Co., 5 Phila. 355; Southern Ex. Co. v. Hunnicutt, 54 Miss. 566; P. M. & F. Ins. Co. v. Whitehill, 25 Ill. 466; Andes Ins. Co. v. Fish, 71 Ill. 620; Wolf v. W. U. Tel. Co., 62 Pa. St. 83; Young v. W. U. Tel. Co., 65 N. Y. 163; Heiman v. W. U. Tel. Co., 57 Wis. 562; W. U. Tel. Co. v. Jones, 95 Ind. 228.

The rule to present claims in thirty days is binding without assent, if brought home to the knowledge of the party concerned: West. Trans. Co. v. Newhall, 24 Ill. 466; Oppenheimer v. U. S. Express Co., 69 Ill. 62.

As to the inference of such knowledge: Oppenheimer v. U. S. Ex. Co., 69 Ill. 62; W. U. Tel. Co. v. Carew, 15 Mich. 525; Heiman v. W. U. Tel. Co., 57 Wis. 562.

Messrs. Flower, Remy & Gregory, for appellees; cited Tyler v. W. U. Tel. Co., 60 Ill. 421; West. Trans. Co. v. Newhall, 24 Ill. 466; Candee v. W. U. Tel. Co., 34 Wis. 471; Bartlett v. W. U. Tel. Co., 62 Me. 209.

Bailey, J.    The only question presented by counsel for the appellant in their brief is, whether the failure of the plaintiffs to present their claim for damages within thirty days after the date of the message, erroneously transmitted by the defendant, is not a bar to their action for such damages; and in considering the case we have confined our attention to that single question.

It is well settled that provisions in contracts of telegraph, express, railroad, insurance and other similar companies, requiring the presentation of claims for damages within a speci-

fied time, and barring all claims not so presented, contravene no principle of law or public policy, and are valid. The rule on this subject is so fully discussed and illustrated in the decisions cited by counsel for the appellant, that it needs no elaboration here. Whatever may be said of the other stipulations of the contract set up in this case, this provision, if shown to have been assented to by the plaintiffs, is binding on them and must be held to be a bar to their recovery.

The question is, was it assented to by the plaintiffs, or, in other words, is it, under the evidence in this case, to be held to constitute a part of the contract between the parties?

The rule adopted in this State by the Supreme Court seems to be, that whether the printed matter on the blank of a telegraph company on which a message is written, and signed by the sender, is a part of the contract or not, is a question of fact to be determined by the circumstances of the case. Tyler v. W. U. Tel. Co., 60 Ill. 421. This rule is adopted or borrowed from decisions in the analogous cases of printed stipulations on receipts given to shippers by express and railroad companies, in which it is held that whether the shipper has knowledge of the terms and assents to the restrictions of the receipt, is for the jury to determine as a question of fact upon evidence *aliunde*, and that all the circumstances attending the giving of the receipt are admissible in evidence to enable the jury to decide that fact.

Apart from the paper itself, the only evidence in the record bearing upon the question of the plaintiff's assent to the printed stipulations on the message blank, is to be found in the deposition of the plaintiff's agent who sent the message. He testifies that when he sent it, he did not notice in the least the printed conditions on the blank which he used, and did not know what they were. Some effort was made on cross-examination to show that he was in the habit of sending messages over the defendant's line frequently, using the defendant's ordinary printed blanks, but as all the questions put to the witness on that subject on cross-examination relate, by their terms, to the date of taking the deposition, which was some two years subsequent to his sending the message in

Western Union Telegraph Co. v. Fairbanks.

controversy, we are unable to see how the cross-examination furnishes any evidence of his familiarity with the defendant's blanks at the date of sending the message.

The proof *aliunde* then is, that when the plaintiff's agent wrote and sent the message, he did not know what the printed conditions in the blank were, and that said conditions were not brought to his notice so as to fix knowledge of them upon him.    It would thus seem that, under the rule adopted in Tyler v. W. U. Tel. Co., the plaintiff's assent to said conditions is not shown.

It is claimed, however, that the message blank in this case differs in one essential feature from the one considered by the Supreme Court in the Tyler case, viz., that here, in the printed portion of the blank, there are words expressing an agreement by the sender to the printed conditions, and a request that the message be sent subject thereto.    The point is by no means free from difficulty, but as we understand the Tyler case, we are constrained to hold that it applies to this portion of the printed blank, the same as to the residue.    If evidence *aliunde* is requisite to show the assent to and adoption by the sender of the form of contract printed on the blank, it is difficult to see why the same proof is not necessary to establish his assent to and adoption as his own of the printed words by which he is made to agree to such proposed contract.

But it is insisted that the defendant's rule requiring the presentation of claims for damages within thirty days, was reasonable, and as such is binding without the plaintiff's assent.    This proposition might perhaps be admitted, if the evidence showed that the rule was brought home to the knowledge of the plaintiffs or their agent at the time the message was sent.    But there is, as we have seen, no such evidence in the record, and the plaintiffs can not be held to be affected by a rule, however reasonable, of which they had no knowledge.

There being in our opinion no error in the record, the judgment will be affirmed.

Judgment affirmed.