WESTERN UNION TELEGRAPH COMPANY

*v.*

L. W. DUBOIS.

*Filed at Springfield April 5, 1889.*

1.  TELEGRAPHS—*duty and liability—likened to common carriers.* Telegraph companies are the servants of the public, and are bound to act whenever called upon, their charges being paid or tendered.  They are, in that respect, like common carriers, the law imposing on them a duty which they are bound to discharge.  The extent of their liability is to transmit correctly the message as delivered.

2.  SAME—*mistake in telegram—rights and remedy of the person receiving the dispatch.*  In England the receiver of a telegraphic dispatch can not sue the telegraph company for a mistake therein, on the ground that the obligation of the company springs entirely from the contract, and that the contract for the transmission of the message is with the sender of it.

3.  But in this country it is well settled that the receiver of the dispatch may maintain an action against the telegraph company through whose negligence the message has been altered or changed, for such loss or damage as he may have sustained by reason of having been led to act upon the dispatch.

4. Where there is no contract relation between the receiver of a telegram and the telegraph company transmitting the same, the former can not maintain assumpsit against the latter for a loss caused by a neglect to send the message correctly. In such case, the receiver is limited to an action on the case, of which a justice of the peace has no jurisdiction.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Ford county; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. GROSS & BROADWELL, for the appellant:

Contracts may be created by an exchange of telegraphic messages, as well as by letter or other writing. 6 Wait's Actions and Defenses, 17, and cases cited.

The acceptance of an offer or proposition transmitted by telegraph creates a contract between the sender and receiver, the terms of which will be evidenced by the messages. *Duble* v. *Batts*, 38 Texas, 312; *Trevor* v. *Wood*, 36 N. Y. (9 Tiff.) 307; Scott & Jarnagan on Telegraphs, sec. 347; Bishop on Contracts, sec. 322.

A person selecting the telegraph as a means of communication makes the telegraph company his agent, and he is bound by the message as delivered to the person addressed. *Telegraph Co.* v. *Harris*, 19 Bradw. 347; *Morgan* v. *People*, 59 Ill. 58; *Durkee* v. *Railway Co.* 29 Vt. 127; *Ayer* v. *Telegraph Co.* 79 Me. 493; *Telegraph Co.* v. *Shotter*, 71 Ga. 760; *Dunning* v. *Roberts*, 35 Barb. 463; *Trevor* v. *Wood*, 36 N. Y. (9 Tiff.) 307; *Wilson* v. *Railroad Co.* 31 Minn. 481; *Saveland* v. *Green*, 40 Wis. 431; *Howland* v. *Whipple*, 48 N. H. 488; Scott & Jarnagan on Telegraphs, secs. 345, 347; Bishop on Contracts, sec. 328.

The relation existing between the sender of a telegraphic message and the company is contractual. The telegraph company undertakes and agrees to and with the person presenting a message, in consideration of its reasonable tolls paid or to

be paid, to transmit by telegraph, and to deliver to the person addressed, the words of the offered message.

For a breach of contract the sender has his action against the telegraph company for all such damages by him sustained as are the direct, natural and necessary consequence of such breach, as contemplated by the parties, interpreting the contract in the light of the circumstances under which, and the knowledge of the parties for whom, the contract was made. *Baldwin* v. *Telegraph Co.* 45 N. Y. 744.

The relation between the telegraph company and a person to whom a message is addressed, is not contractual. They are not in privity. It is only when the person to whom the message is addressed is the one interested in its correct transmission, and by whom the expense of sending it is borne, that he will be regarded as the one with whom the contract is made. *De Rutte* v. *Telegraph Co.* 1 Daly, 547; 30 How. 403.

Messrs. TIPTON & MOFFETT, for the appellee:

The company offering no excuse for the mistake in transmitting the message, it is attributable to its negligence. *Pope* v. *Telegraph Co.* 9 Bradw. 283; 14 id. 535; *Telegraph Co.* v. *Harris,* 19 id. 347; *Telegraph Co.* v. *Valentine,* 18 id. 58.

Without regard to what the English rule may be, the American rule is, that there is sufficient privity of contract between the receiver of the message and the company to enable the former to maintain an action against the latter for negligence, although the price of transmission was paid by the sender. 6 Wait's Actions and Defences, 17; *Aiken* v. *Telegraph Co.* 5 S. C. 358; *Telegraph Co.* v. *Valentine,* 18 Bradw. 57; *Telegraph Co.* v. *Hope,* 11 id. 289; *Ellis* v. *Telegraph Co.* 13 Allen, 226; *May* v. *Telegraph Co.* 112 Mass. 90; *Ellwood* v. *Telegraph Co.* 45 N. Y. 549.

The delivery of the message by the company to the receiver amounts to a representation to him that it has been employed to transmit the intelligence it contains, which, if untrue,

through the negligence of its servants, constitutes a misfeasance, for which the company is liable to the receiver.  Bigelow on Fraud, chap. 1, sec. 3; *May* v. *Telegraph Co.* 112 Mass. 90; *True* v. *Telegraph Co.* 60 Me. 9; Wharton on Negligence, 757, 758, and authorities cited in note 5.

Shearman & Redfield on Negligence, sec. 560, pp. 611, 613, take the same view and assert the same principle that is announced by Wall, J., in *Telegraph Co.* v. *Hope,* 11 Bradw. 289.

There can be no question but that appellee is entitled to recover, and the circuit court so found, and the only remaining question that we care to discuss is the question of damages.

Whether appellee sustained any actual damages or not, appellee is still entitled to nominal damages.  *Doud* v. *Guthrie,* 13 Bradw. 653; *Mellor* v. *Pilgrim,* 7 id. 306; *Logan* v. *Telegraph Co.* 84 Ill. 468; *Smitt* v. *Telegraph Co.* 7 Ky. L. 22; Cooley on Torts, 62, 63; 3 Sutherland on Damages, 298.

Appellee could not get the bill of lading without paying the draft.  He could not maintain replevin by a tender and demand.  His only remedy for a breach of the contract would have been a suit against Moore.  *Low* v. *Freeman,* 12 Ill. 469; *Updike* v. *Henry,* 14 id. 378; *Haverstick* v. *Fergus,* 81 id. 105.

The alternative was presented of either paying the expenses of recovering back the $200 paid to, and damages for breach of contract against, Moore, or paying the extra twenty cents per barrel and bringing this action.  Appellee, under the circumstances, thought that lesser damages would result by his paying the twenty cents per barrel extra.  It was his duty, when damages would necessarily follow by the negligent act of appellant, to take such action in the matter as would cause the least damage possible.  Having done so, his measure of damages,—the actual damage sustained by him,—was twenty cents per barrel, or $37.40; and this we say appellant is liable for in this action.  *Telegraph Co.* v. *Valentine,* 18 Bradw. 57; *Strausse* v. *Telegraph Co.* 8 Biss. 104; *Telegraph Co.* v. *Fatman,* 73 Ga. 285; *Rule* v. *Telegraph Co.* 55 Texas, 308;

*Telegraph Co.* v. *Harris,* 19 Bradw. 347; 6 Wait's Actions and Defenses, 19, 20; 3 Sutherland on Damages, 298.

Appellee was compelled to, and did, pay twenty cents per barrel more than his contract was. He had acted on the telegram as received, and sold out the car of apples he had on hand on the basis that he was to replace them at $1.55 per barrel. He was compelled to pay twenty cents per barrel more, by reason of the negligence of the appellant company.

Mr. Justice Magruder delivered the opinion of the Court:

In the fall of 1887 appellee kept a restaurant and hotel in Gibson, Illinois. He had bought a car-load of apples, at some time during the fall, from I. H. Moore of North Java, New York, at $1.50 per barrel. About October 1, 1887, he wrote a letter to Moore asking if another car-load could be furnished at the same price. On October 5, 1887, Moore answered the letter by sending a telegram. The telegram so sent, when received by appellee, read as follows: "Letter received. Can load car load of best winter fruit at $1.55—answer." Appellee replied on the same day that he would accept the offer contained in the telegram, and sent Moore a draft for $200.00 to apply on the purchase, Moore requiring such a deposit to insure the consummation of the bargain.

The telegram, as delivered by Moore to the appellant company for transmission to the appellee, read as follows: "Letter received—Can load car-load of best winter fruit at $1.75—Answer." The error, by which the figures were made to read $1.55 instead of $1.75, was the fault of appellant. Appellee did not discover the mistake until after the $200.00 had been paid and after Moore had shipped the apples. When the car arrived in Gibson it contained 187 barrels of apples, which were green fruit. Moore sent to the bank at Gibson a draft for the balance of the purchase at $1.75 per barrel with the bill of lading attached. The bill of lading was to be delivered

to appellee upon payment of the draft, so that appellee could not get the bill of lading, or possession of the apples, without paying the draft.   Thereupon he paid the draft, which, with the amount previously paid, was twenty cents per barrel more than the price, at which he had bought the apples, as stated in the telegram received and acted upon.

Appellee brought this suit before a justice of the peace for damages resulting to him from the mistake of the appellant in transmitting the message, and recovered $37.40, being twenty cents per barrel on the 187 barrels.   On appeal to the Circuit Court, where the trial was had before the court without a jury, judgment was entered in favor of appellee for one cent damages.   Both parties excepted to the judgment of the Circuit Court and prayed an appeal to the Appellate Court, where errors were assigned on both sides.   The Appellate Court reversed the judgment of the Circuit Court upon the cross-errors assigned by the appellee, and remanded the cause. Thereupon appellant made a motion to modify the judgment of reversal, so as to make said judgment final and with directions to the Circuit Court to render judgment against appellant for $37.40 and costs, which motion was allowed and judgment entered accordingly.   Upon petition by appellant, the Appellate Court granted a certificate that the case involves questions of law of such importance, on account of collateral interests, as that the same should be passed upon by the Supreme Court, and allowed an appeal to this court.

In England, the doctrine is that the receiver of a telegraphic dispatch can not sue the telegraph company, on the ground that the obligation of the company springs entirely from contract, and that the contract for the transmission of the message is with the sender of it.   This doctrine, however, has never prevailed in the United States.   Here, it is well settled that the receiver of the dispatch may maintain an action against the telegraph company, through whose negligence the message has been altered or changed, for such loss or damage

as he has sustained by reason of having been led to act upon the dispatch. Proof of the alteration or change is *prima facie* evidence of the negligence of the company. The burden rests upon the company to show that the error was caused by some agency, for which it is not liable. *(Western Union Telegraph Co.* v. *Tyler et al.* 74 Ill. 168). There is no doubt that appellee has a right of action against appellant under the facts above stated. The only question is as to the form of the action.

If the action must be in tort or case, this suit was improperly brought before a justice of the peace, because, under our statute, justices of the peace have no jurisdiction in actions on the case for such an injury as is here involved.

The original contract for the transmission of the message was made between Moore and the company. It does not appear, however, that there was any contract, express or implied, between appellee and the company, nor was there any contract relation of any kind between them. Under some of the authorities, where the sender of the dispatch is the agent of the party to whom it is sent, or where the contract between the sender and the company is for the benefit of the party to whom the message is sent, the latter may sue the company in assumpsit. But, here, the relation between Moore and the appellee was that of vendor and vendee. Moore wanted to sell his apples, and the proof shows that he paid for the telegram himself. He made the contract with the company for the transmission of the message in his own interest, and to effect a sale of his own property. We do not think, therefore, that appellee was entitled to bring against the company any action based upon the existence of a contract relation between him and the company. His remedy is in tort.

Telegraph companies are the servants of the public, and bound to act whenever called upon, their charges being paid or tendered. They are, in that respect, like common carriers, the law imposing upon them a duty which they are bound to discharge. The extent of their liability is to transmit correctly

the message as delivered. (*Tyler et al.* v. *Western Union Telegraph Co.* 60 Ill. 421). Hence, when the receiver of a dispatch suffers loss from the careless and negligent performance of its duty by such a company, he is entitled to recover damages for the tort, and the proper remedy is an action on the case.

The damages in such case should be for an amount which will compensate the plaintiff for his actual loss. They must be in satisfaction of the natural and proximate consequence of the defendant's act. In the present suit, appellee would not have bought the apples if he had known that their price was $1.75 per barrel. The facts—that he did not discover the mistake until after the apples had been shipped, that he had already advanced $200.00 towards their purchase, that he could not obtain possession of them without paying the balance of the purchase price at the rate of $1.75 per barrel, that they were perishable property liable to be lost by the natural process of decay, if the delay in unloading them should be too great, and that appellee needed them in his business, having already disposed of a car load on hand in order to make room for the present consignment—authorized him to pay the extra twenty cents per barrel and look to the appellant for reimbursement. He was justified in relying upon his own judgment to make the loss as small as possible. Under the circumstances as thus detailed his judgment was a reasonable one.

We think the Appellate Court did right in fixing the amount of damages at $37.40. But the distinctions between common law actions are still recognized in this State. The jurisdiction of justices of the peace is, in large measure, based upon and limited by such distinctions. It is our duty to recognize them. Inasmuch therefore as appellee has pursued the wrong remedy and before the wrong tribunal, the judgment must be reversed.

*Judgment reversed.*