WILLIAM E. WEBBE

*v.*

THE WESTERN UNION TELEGRAPH COMPANY.

*Opinion filed November 1, 1897—Rehearing denied December 14, 1897.*

1. TELEGRAPHS—*no contract relation exists between telegraph company and receiver of dispatch.* The proper remedy of a receiver of a dispatch for damages occasioned by a negligent alteration of the dispatch in course of transmission is an action of tort, as no contract relation exists between him and the telegraph company.

2. SAME—*receiver of dispatch not bound by conditions printed on blank in absence of assent.* The receiver of a dispatch is not bound by a provision printed on the blank, requiring claims for damages to be presented in writing within sixty days, in the absence of proof that he assented thereto.

3. SAME—*rules binding sender of dispatch do not apply to receiver suing in tort.* The rule that the sender of a dispatch assenting to conditions printed on the blank is bound thereby, has no application to the receiver of the dispatch suing the telegraph company in tort for damages caused by the negligent alteration in transmission.

4. SAME—*rules binding patrons of telegraph company without assent are against public policy.* That a telegraph company may adopt rules regulating its relations with its patrons, which, though reasonable, shall be binding upon patrons if they have notice thereof, whether they assent to them or not, is against public policy.

5. EVIDENCE—*whether evidence establishes notice of regulations is for the jury.* Whether the receiver of a dispatch who has used the blanks of the telegraph company for several years has knowledge of conditions printed thereon regulating the rights of patrons is a question to be determined by the jury.

*Webbe* v. *Western Union Tel. Co.* 64 Ill. App. 331, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

This is an action of trespass on the case, brought on August 26, 1893, by the appellant, the receiver of a telegraphic message, against the appellee company to recover damages, growing out of the alteration or change of such message, which was sent to appellant over the lines of

appellee.   Upon the trial in the court below, the court refused all the instructions asked by the plaintiff, and instructed the jury to find the defendant not guilty.  Accordingly, the jury returned a verdict in favor of the defendant;  and the court, having overruled a motion to set aside the verdict and grant a new trial, gave judgment against the plaintiff for costs.   This judgment has been affirmed by the Appellate Court.   The present appeal is prosecuted from such judgment of affirmance.   The Appellate Court entered an order, certifying that the cause involved questions of law of such importance, on account of principal and collateral interests involved, as that it should be passed upon by the Supreme Court.

The facts, out of which the controversy arises, are substantially as follows:  On January 16, 1893, one J. C. Haas was engaged in business at Montgomery, Alabama, under the firm name of I. H. & J. C. Haas, as a broker and dealer in merchandise;  and, on that day, delivered to the appellee company, at its office in Montgomery, a dispatch to be sent to the appellant, who was doing business in Chicago upon the board of trade, as a commission merchant, under the name of William E. Webbe & Co.   The dispatch, as delivered to the operator at Montgomery, was as follows:   "Buy five May wheat, limit loss two cents." The meaning of this dispatch was, that Haas thereby directed Webbe to buy upon the Chicago board of trade 5000 bushels of wheat, deliverable during the month of May following, and to limit any loss, that might be incurred upon such purchase, to two cents per bushel.   Haas paid to appellee its charges for transmitting the telegram to Chicago.   The message, as delivered to Webbe in Chicago, read as follows:   "Buy fifty May wheat, limit loss two cents."   The dispatch, as thus delivered, meant, and was understood by Webbe to mean, that he was to buy upon the Chicago board of trade 50,000 bushels of wheat, deliverable during the month of May then next ensuing, and to limit any loss upon such purchase to two cents

per bushel. The negligence, charged against the appellee in the declaration, consists in changing the word *five*, contained in the dispatch, as delivered by Haas in Montgomery, to the word *fifty* in the dispatch, as delivered to appellant in Chicago. Accordingly, appellant bought 50,000 bushels of wheat, instead of 5000 bushels of wheat, as he was directed to do by Haas in the original dispatch sent by him. The 50,000 bushels of wheat so purchased were, on January 18, 1893, sold by Webbe at a loss of two cents per bushel on one-half thereof, and one and seven-eighths cents per bushel on the other half thereof.

PAGE & BOOTH, for appellant:

The receiver of a telegram which has been negligently altered by the telegraph company may sue the company for damages sustained through acting upon the telegram. Gray on Com. by Telegraph, sec. 74; *De la Grange* v. *Telegraph Co.* 25 La. Ann. 383; *Telegraph Co.* v. *Dubois,* 128 Ill. 248; *Telegraph Co.* v. *Dryburg,* 35 Pa. St. 298; *Telegraph Co.* v. *Hope,* 11 Ill. App. 289.

The sender of a telegram is not bound to the receiver by the terms of the message, where it has been negligently altered by the telegraph company. Gray on Com. by Telegraph, secs. 105, 106; *Pepper* v. *Telegraph Co.* 87 Tenn. 554.

Printed conditions upon a telegraph blank do not bind the party who uses such blank, unless it be shown by evidence *aliunde* that he knew and assented to such conditions. *Tyler* v. *Telegraph Co.* 60 Ill. 421; *Telegraph Co.* v. *Fairbanks,* 15 Ill. App. 600.

The question whether the plaintiff knew of the sixty day limitation and assented thereto is not a conclusion of law, but is a fact to be submitted to and determined by the jury upon a consideration of all the surrounding circumstances. *Field* v. *Railroad Co.* 71 Ill. 462; *Telegraph Co.* v. *Fairbanks,* 15 Ill. App. 600; *Boscowitz* v. *Express Co.* 93 Ill. 523.

The telegraph company cannot limit the right of the receiver of a message, who sues in tort, by any stipulations contained upon the printed blank upon which the message delivered to him is written.   Gray on Com. by Telegraph, sec. 75; *Telegraph Co.* v. *Fenton*, 52 Ind. 1; *Telegraph Co.* v. *McKibben*, 114 id. 511; *Harris* v. *Telegraph Co.* 9 Phila. 88; *Dela Grange* v. *Telegraph Co.* 25 La. Ann. 383.

WILLIAMS, HOLT & WHEELER, for appellee:

A provision that claims will not be recognized unless made within a specified reasonable time is reasonable and valid, and it is peculiarly applicable to the nature of the telegraph business.   *Telegraph Co.* v. *Fairbanks*, 15 Ill. App. 603; *Telegraph Co.* v. *Beck*, 58 id. 564; *Wolf* v. *Telegraph Co.* 62 Pa. St. 83; *Lewis* v. *Railway Co.* 5 H. & N. 867; *Express Co.* v. *Caldwell*, 21 Wall. 264; *Young* v. *Telegraph Co.* 65 N. Y. 163; Gray on Com. by Telegraph, 62; *Sherrill* v. *Telegraph Co.* 109 N. C. 527; Croswell on Electricity, secs. 538, 540, and cases cited; *Express Co.* v. *Harris*, 51 Ind. 127; *Heiman* v. *Telegraph Co.* 57 Wis. 562.

Such a requirement is binding not only as a contract to which assent must be shown, but as a rule or regulation affecting all persons chargeable with knowledge of its existence, without assent.   The question is not one of assent, express or implied, but of simple notice.   *Oppenheimer* v. *Express Co.* 69 Ill. 62; *Transportation Co.* v. *Newhall*, 24 id. 469; *Boscowitz* v. *Express Co.* 93 id. 523; *Express Co.* v. *Caldwell*, 21 Wall. 264; *Breese* v. *Telegraph Co.* 48 N. Y. 132; *Becker* v. *Telegraph Co.* 11 Neb. 87; *Schwartz* v. *Telegraph Co.* 18 Hun, 157; *Ellis* v. *Telegraph Co.* 13 Allen, 226; Croswell on Electricity, secs. 493, 495, 506.

One who has for years used the telegraph company's blanks, on which a regulation is conspicuously printed, is chargeable with notice of its existence.   *Oppenheimer* v. *Express Co.* 69 Ill. 62; *Birney* v. *Telegraph Co.* 18 Md. 341; *Kiley* v. *Telegraph Co.* 109 N. Y. 236; *Becker* v. *Telegraph Co.* 11 Neb. 87; *Telegraph Co.* v. *Buchanan*, 35 Ind. 439; *Womack*

v. *Telegraph Co.* 58 Tex. 176; *Telegraph Co.* v. *Carew*, 15 Mich. 536; *Field* v. *Railroad Co.* 71 Ill. 458; *Transportation Co.* v. *Moore*, 88 id. 136.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon the blank form, containing the telegraphic message delivered by Haas to the appellee's operator at Montgomery, Alabama, there were printed in small type certain conditions, among which was the following: "The company will not hold itself liable  *  *  *  in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission."

Upon the back of the blank form, upon which the dispatch as delivered to appellant in Chicago was written, certain stipulations and conditions were printed, the last of which was as follows: "The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission."

It is contended by appellee, that the claim here sued upon was not presented in writing within the sixty days named in the printed conditions.    It is not altogether clear, under the evidence in this case, that the claim was not presented in writing within sixty days as required by the condition.    On February 7, 1893, one of the attorneys of the appellant wrote a letter to an officer of the appellee company.    Although this letter stated, that the claim for damages was made against appellee on behalf of I. H. & J. C. Haas, yet the letter explained fully the nature of the alteration which was made in the dispatch, and the nature of the claim based upon the loss incurred by reason of that alteration.    But whether the claim was presented in writing within the sixty days or not, it seems to be conceded, that the action of the court in instructing the jury to find for the defendant was based upon the

conclusion, that the claim was not presented in writing within the time named.

The question in the case is, whether the court erred in taking the case away from the jury. The further question involved is, whether the failure to present the claim in writing within the sixty days, if there was such failure, constitutes a defense against the present action. It is not denied, that the company was guilty of negligence in delivering the dispatch as altered, instead of delivering it as originally sent. At any rate, no contest is made upon the question as to whether there was such negligence or not. Counsel for appellee confine themselves in their brief to the proposition that, for want of a claim in writing within sixty days after the dispatch in question was sent, appellant's right of recovery is barred.

It is to be noted, that this suit is not brought by Haas, the sender of the dispatch, but by Webbe, the receiver of the dispatch as changed. The dispatch, as sent, is signed by the sender, but the dispatch, as received, is not signed by the receiver. The question then arises, whether any difference exists between the right of recovery by the sender of the dispatch and the right of recovery by the receiver of the dispatch, so far as these printed conditions upon the blank forms are concerned. We have held, that the relation of contract exists between the sender of the dispatch and the telegraph company, but that no relation of contract exists between the receiver of the dispatch and the telegraph company; and that the proper remedy of the receiver of the dispatch for damages on account of its alteration is an action in tort. (*Western Union Tel. Co.* v. *DuBois*, 128 Ill. 248). Ordinarily, where a shipper of goods, or the sender of a telegraphic dispatch, is held to be bound by stipulations or conditions printed upon the blank form of a receipt, or bill of lading, or dispatch, it is upon the ground, that the person so bound signs the document, containing the conditions, and makes a contract with the company, which

is to carry his goods or transmit his message. It would seem to be clear, however, that such conditions and stipulations would not have the same binding effect where, as here, no contract relation exists.

In a case, where a suit in assumpsit for damages was brought by the sender of a dispatch against the telegraph company, we held, that the telegraph company is a servant of the public, and bound to act whenever called upon, its charges being paid or tendered; that such companies are, in this respect, like common carriers, and, though not regarded, like common carriers, as insurers of the safe delivery of every message intrusted to them, yet their duty is to transmit correctly the message as delivered; that they are bound to the use of due and reasonable care, and liable for the consequences of carelessness or negligence, in the conduct of their business; that, where a party desiring to send a telegraphic dispatch is required by the company to write his message upon a paper, containing a condition exonerating the company from liability for an incorrect transmission of the message unless it shall be repeated and at an additional cost therefor to the sender, such a restriction, even if regarded as a contract, is unjust, without consideration, and void; that it is against public policy to permit telegraph companies to secure exemption from the consequences of their own gross negligence by contract; that, notwithstanding any special condition which may be contained in a contract between a company and the sender of a message respecting the liability of the former in case of an inaccurate transmission of the message, the company will still be liable for mistakes happening by its own fault; that it will depend on circumstances, whether a paper, furnished by the company on which the message is written and signed by the sender, is a contract or not; that it is a question for the jury to determine, as a question of fact, upon evidence *aliunde,* and from all the circumstances attending the signing of the paper, whether or

not the sender of the dispatch has knowledge of its terms and assents to its restrictions. (*Tyler, Ullman & Co.* v. *Western Union Tel. Co.* 60 Ill. 421). The *Tyler case* distinctly held, that assent by the sender of the dispatch to the printed terms and conditions upon the blank form must be shown, in order to make such terms and conditions binding as a contract upon the sender. The doctrine of the *Tyler case* has been subsequently endorsed and approved by this court. (*Western Union Tel. Co.* v. *Tyler*, 74 Ill. 168; *Western Union Tel. Co.* v. *DuBois, supra*).

If assent to such terms and conditions is necessary to bind the sender of the dispatch, surely assent to such terms and conditions, as printed upon a dispatch delivered, will be necessary to bind the receiver thereof. The receiver of the dispatch will certainly not be bound by a provision thereon, requiring a claim to be presented within sixty days, in the absence of proof that he assented to such a provision. (*Western Union Tel. Co.* v. *Fairbanks*, 15 Ill. App. 600; *Western Union Tel. Co.* v. *DeGolyer*, 27 id. 489; *Western Union Tel. Co.* v. *Lycan*, 60 id. 124).

It is said, however, that the requirement that the claim should be presented within sixty days is a reasonable requirement, and that a party suing for damages will be bound to show, that he has complied with such requirement, if he had notice or knowledge of the same, or if there were any circumstances of such a character as to affect him with such notice or knowledge. Upon an examination of the authorities it will be found, that, in most cases where the provision in regard to the limit of sixty days has been held to be reasonable, and notice or knowledge of the same has been held to be binding upon the plaintiff in the suit, the controversy has been between the sender of the dispatch and the telegraph company. Such doctrine, however, has no application as between the receiver of the dispatch, whose suit is in tort against the company for negligence in the performance of a public duty, and the telegraph company. From

the rule, that assent is necessary to make such a condition as the sixty day limit binding, it necessarily follows, that mere notice or knowledge of such condition will not affect the receiver of the dispatch. It is against public policy, that a telegraph company may adopt rules, regulating its relations with its patrons, which, if they are reasonable, shall be binding upon such patrons without their assent, if they only have knowledge. Counsel for appellee refer to the case of *Oppenheimer* v. *United States Express Co.* 69 Ill. 62, as supporting the doctrine contended for by them; but "there is in that case (*Oppenheimer case*) no departure from the uniform decisions of this court, that a carrier cannot be released from the duties and liabilities annexed to its employment, unless the shipper assents to the attempted restrictions." (*Boscowitz* v. *Adams Express Co.* 93 Ill. 523).

Some of the cases seem to hold, that the printed conditions upon blank forms of telegraphic dispatches, including the one in reference to the limit of sixty days, are mere regulations, and not contracts between the sender of the message and the telegraph company. The force of the distinction, thus sought to be made, lies in the fact, that, if the conditions or stipulations are considered as mere regulations, the assent of the sender to them is not necessary, but that he will be bound, if they are brought home to his knowledge; whereas, if they are held to be parts of a contract, the assent of the sender must be shown in order to bind him. (Croswell on Law of Electricity, sec. 493). But whatever may be the correct view of these conditions as being regulations or contracts where the controversy is between the sender of the dispatch and the telegraphic company, we are of the opinion, that such distinction has no application where the controversy is between the company and the receiver of the dispatch. (Croswell on Law of Electricity, sec. 540.) There is no proof of contract between the telegraph company and the person to whom the message is addressed, and, therefore,

he could not be held bound by these conditions or stipulations.   (Croswell on Law of Electricity, sec. 504, and cases cited in note 2).

Counsel for appellee rely mainly upon the case of *Manier & Co.* v. *Western Union Tel. Co.* 94 Tenn. 442, as authority for the position, that such conditions and stipulations, including the limit of sixty days, are binding upon the receiver, as well as the sender of the dispatch. But we are not inclined to assent to the doctrine of the Tennessee case.   The author of the opinion in that case refers to cases, holding that the addressee of the message is not bound by the stipulation as to the sixty day limit, because he did not make the contract; and also to cases, holding to the contrary, and says that it is not necessary to determine, in the case there under consideration, where the weight of authority lies.  The conclusion announced in that case rests mainly upon two considerations, namely: *first*, that, where the receiver of the message is a patron of the company, he will be presumed to have knowledge of the form of the contract embodied in the blanks used; *second*, that the receiver's right to recover rests entirely upon the contract of sending, and upon the principle that, where two parties contract for the benefit of a third, such third party may maintain an action for the breach of the agreement in his own right.   We are unable to see, that these considerations can have any influence, where the action brought by the receiver of the dispatch is an action in tort for damages for the careless and negligent performance of a public duty.

The opposite view from that contended for by counsel for appellee is supported by respectable authority, and is in harmony with the decisions heretofore rendered by this court, and is a natural corollary from such decisions. Gray on Communication by Telegraph, (at sec. 75), says: "The printed matter upon the blank form, upon which a message is delivered at the place of destination, acquaints the receiver usually with the fact, that the telegraph com-

pany will not be liable for a loss in any case, in which claim for that loss is not presented in writing within sixty days after sending the message. As the receiver's right of action is purely one in tort, it is difficult to see how the telegraph company can arbitrarily compel a claim for loss to be made within any particular time. The general rule is, that an action of tort can be brought without other notice at any period within the time allotted to it by the Statute of Limitations." Upon this subject the Supreme Court of Nebraska says: "The clause printed on the telegraph blank to the effect that the telegraph company would not be liable for damages in any case, unless the claim was presented in writing in sixty days, was and is unreasonable and wholly without consideration if viewed as a contract between the telegraph company and the sender of the message, and an attempt on the part of the telegraph company to enact for itself a statute of limitations. * * * The attempt, so often indulged in by insurance and telegraph companies to prescribe for themselves a law, is not one that appeals to the judgment, or commends itself to the conscience of this court." (*Pacific Tel. Co.* v. *Underwood*, 37 Neb. 315).

Croswell, in his work on the Law Relating to Electricity, (sec. 557), says: "In actions of tort by the addressee of the message, it is difficult to see how any limit of time, in which claims must be made against a telegraph company for damages occasioned by error or negligence in sending the message, can affect the plaintiff. In such cases, the plaintiff has no privity with the sender of the message, but sues solely for the breach of duty by the telegraph company, *i. e.*, the failure of the telegraph company to perform its public duty of transmitting dispatches promptly and with due care, and has nothing to do with the special contract between the sender and the telegraph company, and, therefore, whatever stipulations the sender may make with the telegraph company should not bind the addressee."

The learned author of the article on Telegraphs and Telephones, in volume 25 of the American and English Encyclopædia of Law, (pp. 807, 808), says: "Other authorities hold that the receiver's action is not on the contract, but for the tort, *i. e.*, for the breach of the company's public duty. Under this view of the rule, the stipulations in the original contract can have no binding effect upon the receiver's action. As a matter of fact, the telegraph companies endeavor to incorporate the stipulations into the message as delivered, but as the receiver does not attach his signature thereto, they are of no effect, unless it can be shown that they were brought to his notice and assented to by him." (*Pacific Tel. Co.* v. *Underwood, supra; Western Union Tel. Co.* v. *McKibben,* 114 Ind. 511; *Telegraph Co.* v. *Longwill,* 5 N. Mex. 308; *Herron* v. *Western Union Tel. Co.* 90 Iowa, 129; *Johnston* v. *Western Union Tel. Co.* 33 Fed. Rep. 362; *De la Grange* v. *Southwestern Tel. Co.* 25 La. Ann. 383; *Harris* v. *Western Union Tel. Co.* 9 Phila. 88).

It is well settled, that, even if the stipulation in question would be binding upon the receiver of the dispatch in case of an assent thereto, it is a question for the jury to determine, whether there was such assent or not; and, even if mere notice or knowledge of the stipulation would bind the receiver of the dispatch, the question, whether such receiver had notice or knowledge, is a question of fact to be determined by the jury from all the facts and circumstances in the case. (*Tyler, Ullman & Co.* v. *Western Union Tel. Co. supra; Boscowitz* v. *Adams Express Co. supra;* Croswell on Law of Electricity, sec. 546).

In the case at bar, the appellant swore, that he had never read the printed matter on the blank received by him, and never knew what it was; that he had never heard of the sixty-day condition, until a few days before testifying; and that he did not know what the terms of the conditions upon the blank form were, and had not only never read them but had never heard them talked about. The evidence, it is true, showed that, for a number of

years, the appellant had been conducting his business correspondence by telegraph, and that most of it had been conducted over the lines of the appellee, and that he had received and sent most of the telegrams upon the blanks of the appellee. This proof did not authorize the court below to take the case from the jury, and direct them to find for the defendant. Even if the circumstance, that appellant had used the blank forms of the appellee for a number of years had a tendency to show his notice or knowledge of the conditions printed thereon, yet it was for the jury to say what effect should be given to such circumstances, considered in connection with all the other testimony in the case. Where certain consignees were frequent shippers by a certain line, and were in the habit of receiving bills of lading with certain conditions therein, a presumption was held to arise that such consignees were familiar with the contents of the bills of lading. The presumption of such familiarity, however, would only arise out of the fact of the use of the blanks where there was no evidence to the contrary. The presumption that thus arises is not conclusive. (*Merchants' Dispatch and Trans. Co.* v. *Moore*, 88 Ill. 136). Here, whatever presumption may have arisen against the appellant, in favor of his familiarity with the terms of the conditions printed upon the blank used by him, was rebutted by his sworn statement, that he had never read the terms of those conditions, and did not know what they were. Certainly it was the duty of the court to leave it to the jury to say, whether or not he assented to the condition in regard to the limit of sixty days.

For the error in taking the case away from the jury and instructing them to find for the defendant, the judgments of the Appellate Court and of the circuit court of Cook county are reversed; and the cause is remanded to the latter court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*