FISHER and another, Appellants, vs. WESTERN UNION TELE-
GRAPH COMPANY, Respondent.

*September 8—September 29, 1903.*

*Telegraph companies: Delay in delivering message: Damages: Prox-*
*imate result: Action, tort or contract.*

1. Under sec. 1778, Stats. 1898 (making telegraph companies "lia-
   ble for all damages occasioned by the failure or negligence"
   of their employees in receiving, copying, transmitting, or de-
   livering messages), the damages recoverable are such only as
   are the proximate result of the company's breach of duty.
2. Damages so proximately resulting from breach of the company's
   duty in the cases mentioned in the statute are recoverable,
   even though the action is upon contract, without showing that
   the company was chargeable with knowledge that such results
   were likely to follow from its conduct.
[3. Whether the addressee of a telegram, the sender not being his
   agent nor making a contract for his benefit, must sue, if at
   all, for breach of duty constituting actionable negligence, not
   determined.]
4. Negligent delay in delivering a telegram which merely rejected
   plaintiffs' offer to buy goods on certain terms did not entitle
   them to recover damages on account of their failure to make
   the purchase on other terms, as they might or would have
   done had the telegram been seasonably delivered. Such dam-
   ages are not the proximate result of the company's breach of
   duty.

APPEAL from a judgment of the circuit court for Rock
county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

Action to recover damages alleged to have been sustained
by breach of duty on the part of defendant in failing to de-
liver a telegram with reasonable diligence. The complaint
was to this effect:

Plaintiffs, who were dealers in tobacco at Janesville, Rock
county, Wisconsin, on May 24, 1901, delivered to defend-
ant, a corporation engaged in the telegraph business and hav-
ing a line for communication between Janesville, Wisconsin,
and Westby, Wisconsin, for transmission to A. Johnson, a

person having a stock of tobacco for sale at the latter place, a dispatch worded as follows: "Your letter received. Offer accepted. You to pay for sampling by Linde Hamilton. Answer." The dispatch was delivered to Johnson at 2 o'clock p. m. on the day aforesaid. At 7:15 p. m. thereafter, Johnson delivered to defendant at Westby, for transmission to plaintiffs at Janesville, a reply worded as follows: "Will not pay for sampling." It was received at defendant's office in Janesville at 7:40 p. m. after such delivery at Westby. The agent at Janesville who received the same knew at the time thereof that plaintiffs expected a reply from Johnson to the offer for his tobacco and were anxious to be in possession thereof as soon as practicable. Their place of business was but a short distance from the telegraph office in Janesville, and there was easy means of communication between such place of business and such office by telephone. Defendant neglected to deliver the dispatch there till 12:20 p. m. on the third day after it was received as aforesaid. Prior to the sending of the telegram to Johnson plaintiffs, as agents for Samuel L. Johns, of McSherrytown, Adams county, Pennsylvania, examined Mr. Johnson's stock of tobacco, which consisted of 923 cases weighing 282,365 pounds, and made an offer for the same, which was subsequently refused, the refusal being accompanied by an offer to sell the stock for ten cents per pound, marked weights, no pay for cases. When plaintiff's telegram was sent to Johnson and his reply was received at the Janesville office they had authority to accept the tobacco upon the terms mentioned in such reply, and would have done so in time to have secured the same had such reply been delivered to them with reasonable diligence. By the delay in that regard they lost the opportunity to buy the tobacco, and were thereby damaged in the sum of $923 in that by the contract with their principal they would have been entitled to a commission of that amount in case they obtained the tobacco. Plaintiffs filed their claim for damages with de-

fendant sixty days after Johnson's message to them was delivered to defendant's Westby office for transmission.

Defendant answered denying that its agent at Janesville knew when the Johnson message to plaintiffs was received that there was any special importance attached to it; also denied all allegations respecting plaintiffs having been damaged by delay in delivering the telegram, and admitted substantially all other allegations in the complaint.

A finding by the jury was waived. The court found facts as alleged and admitted, and further, in effect, that the telegram to Johnson related to negotiations between plaintiffs and the former for the purchase of tobacco as alleged; that at 9:50 a. m. after Johnson's reply was delivered at the Westby office he sold the tobacco to other parties, and that had plaintiffs obtained the tobacco they would have earned as commission the amount alleged in the complaint, to wit, $923. Evidence to the effect that had plaintiffs seasonably received the reply they would have immediately offered to take the tobacco and paid for the sampling, and that had Johnson received such an offer before he sold to other parties he would have accepted it, was rejected.

Upon the facts found the court concluded as matter of law that the damages claimed by the plaintiffs were too remote to be recovered, and judgment was rendered accordingly.

For the appellants there was a brief by *Fisher & Oestreich,* and oral argument by *A. M. Fisher.* To the point that the delay by the defendant company in the delivery of the message in question was the direct and proximate cause of plaintiffs' loss, they cited Joyce, Electric Law, §§ 945, 975; Sutherland, Damages (2d ed.) § 961; *Western U. Tel. Co. v. Wilhelm,* 48 Neb. 910, 67 N. W. 870; *Carver v. W. U. Tel. Co.* 15 Tex. Civ. App. 547, 39 S. W. 1021; *Western U. Tel. Co. v. Haman,* 2 Tex. Civ. App. 100, 20 S. W. 1133; *United States Tel. Co. v. Wenger,* 55 Pa. St. 262; *Western U. Tel. Co. v. Lyman,* 3 Tex. Civ. App. 460, 22 S. W. 656; *Mitchell v. W.*

*U. Tel. Co.* 5 Tex. Civ. App. 527, 24 S. W. 550; *Western U. Tel. Co. v. Linn,* 87 Tex. 10, 23 S. W. 895; *Thompson v. W. U. Tel. Co.* 64 Wis. 531; *State Ins. Co. v. Jamison,* 79 Iowa, 245, 44 N. W. 371; *McPeek v. W. U. Tel. Co.* 107 Iowa, 356, 78 N. W. 63; *Parks v. Alta C. Tel. Co.* 13 Cal. 423; *Western U. Tel. Co. v. Cook,* 54 Neb. 109, 74 N. W. 395; *Wallingford v. W. U. Tel. Co.* 60 S. C. 210, 38 S. E. 443.

For the respondent there was a brief by *A. G. Zimmerman,* attorney, and *Rufus B. Smith,* of counsel, and oral argument by *Mr. Smith.*

MARSHALL, J. Upon what precise ground the trial court decided this case does not appear. Counsel for the respective parties may have agreed in the presentation of the cause there, as they did here, that the action was for breach of contract, and the decision have been rendered upon the authority of cases holding that the addressee of a telegram, the sender not being his agent nor making a contract for his benefit, must sue for breach of duty constituting actionable negligence or not at all. There is much authority to that effect. *Western U. Tel. Co. v. Dubois,* 128 Ill. 248, 21 N. E. 4; *McPeek v. W. U. Tel. Co.* 107 Iowa, 356, 78 N. W. 63; *Webbe v. W. U. Tel. Co.* 169 Ill. 610, 48 N. E. 670; *Curtin v. W. U. Tel. Co.* 13 App. Div. 253, 42 N. Y. Supp. 1109; 25 Am. & Eng. Ency. of Law, 826. Whether it voices the law correctly need not be decided. That will be an important and interesting question for discussion and decision in the event of a cause coming here depending upon its solution. The trial court may have decided the cause wholly upon the ground that the damages claimed were not the proximate result of respondent's breach of duty, since there was neither a contract consummated nor even an advance upon one side in the nature of an offer which by seasonable acceptance would have made a contract, but merely the late delivery of a message rejecting

an offer, which left the person sending the same free to treat as he might see fit any subsequent offer made to him.

The idea advanced on behalf of appellants is that, had they known Johnson's attitude in time, they would have submitted thereto and he would have sold them the tobacco, hence that their failure to obtain the property was occasioned by respondent's breach of duty within the meaning of our statute. It is argued that the legislature, in providing that, "Any person, association or corporation operating or owning any telegraph . . . line doing business in this state shall be liable for all damages occasioned by the failure or negligence of their operators, servants or employees in receiving, copying, transmitting or delivering of dispatches or messages" (sec. 1778, Stats. 1898), intended to render the element of proximate relation, in the common-law sense, of the damages to the injury complained of, in a case like this, unnecessary. We are unable to subscribe to that view. Such a radical change in the legal relation of parties as that would mean could not properly be read out of a legislative enactment without the language thereof being plain and unmistakable. There are many laws respecting liability for breach of duty on the part of persons and corporations performing *quasi*-public services, where language similar to that in question is used, the word "occasioned" or some similar word being in place as here, in respect to which it has been held that such word refers to "occasioned" in a legal sense only, not extending beyond the settled rules as to proximate relation of damages to the injury in the law of negligence, requisite to render the same recoverable. The statute requiring the fencing of railroads, as it existed when *Curry v. C. & N. W. R. Co.* 43 Wis. 665, was decided, made every railway corporation liable for breach of duty thereunder for all damages "occasioned thereby." Nevertheless it was held that the statute did not create a rule of absolute liability; that the word "occasioned" was used with reference to settled rules of legal responsibility

for breach of duty constituting actionable negligence. It was decided that the defense of contributory negligence was not taken away by the statute. Subsequently, to accomplish that result a radical change was made in the statute, leaving the legislative will in respect to the matter unmistakable. By sec. 1339, Stats. 1898, towns are made liable for all damages to any person or his property while he is traveling on the highway, caused by reason of any want of sufficiency thereof, yet the doctrine of proximate cause is held to apply to an action to recover under such statute the same as any other action grounded on negligence (*Seaver v. Union,* 113 Wis. 322, 89 N. W. 163), and the settled rule limiting recoverable damages to the proximate results of the wrong complained of has always applied. *McNamara v. Clintonville,* 62 Wis. 207, 22 N. W. 472; *Oliver v. La Valle,* 36 Wis. 592; *Stewart v. Ripon,* 38 Wis. 584.

In view of the foregoing it seems quite clear that, under the statute, damages are recoverable—even where the action is for breach of contract, and will lie in that form only,—not within the contemplation of the parties, when their relations were formed, as the probable result of a breach thereof; that is, that the familiar doctrine of *Hadley v. Baxendale,* 9 Exch. 341, often approved by this court (*Cockburn v. Ashland L. Co.* 54 Wis. 619, 12 N. W. 49; *Guetzkow Brothers Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119), and controlling ordinarily in actions for damages for breach of contract, does not apply regardless of the form of the action; that it has been displaced by the statute. In that light, *Hibbard v. W. U. Tel. Co.* 33 Wis. 558, *Candee v. W. U. Tel. Co.* 34 Wis. 471, and similar cases, do not apply.

The full scope of the statute has not been defined by any previous decision of this court. The subject was touched upon in *Cutts v. W. U. Tel. Co.* 71 Wis. 46, 36 N. W. 627. It was there inferentially held, at least, that a telegraph company is liable in case of breach of duty in respect to deliver-

ing a telegram for all damages flowing, in a legal sense, from such breach, though the circumstances rendering the same a probable result of such breach were unknown to the company. *Hartstein v. W. U. Tel. Co.* 89 Wis. 531, 62 N. W. 412, and *Summerfield v. W. U. Tel. Co.* 87 Wis. 1, 57 N. W. 973, are consistent therewith. In the latter case the court, speaking by Mr. Justice WINSLOW, said:

"We cannot regard the statute as creating, or intended to create, in any way, new elements of damage. . . . Had a radical change in the law relating to the kinds of suffering which should furnish a ground for damages been contemplated, the act would have expressed that intention in some unmistakable way. We see nothing in the law to indicate such intention."

The point involved there was whether loss attributable to injured feelings, only, was recoverable. The decision was based upon the doctrine that all injuries causing measurable damages having some proximate relation to the injury can be recovered; that in the absence of any physical injury, by common law rules, there is no such proximate relation and that the legislature did not intend by the statute to displace that doctrine. We see no reason for departing from that view. Where there is a proximate relation in a common law sense between an injury caused by a failure of duty on the part of a telegraph company in the cases mentioned in the statute, and the injurious results, if there be such, the party damaged is entitled to recover compensation for such results under the statute, whether the form of action be on contract or for breach of duty constituting actionable negligence.

The learned counsel for respondent in the course of their argument fell into some confusion by mixing, so to speak, the rule of *Hadley v. Baxendale* with the doctrine of proximate cause in the law of negligence, and such doctrine with that of proximate relation between an injury and the results in a negligence action necessary to render the same subjects for compensation. The one is quite different from

the other. In the former, the wrongdoer must be so circum-stanced at the time of the breach of duty as to be chargeable with knowledge that an injury to the person or property of another may probably result from such breach. That ele-ment is essential in addition to that of natural and probable consequences of the conduct of the wrongdoer as regards the particular injury, the conduct and consequences being con-nected, directly or by an unbroken chain of successive events dependent each upon the other. An actionable injury having taken place, the results forming legitimate subjects for com-pensatory damages are not dependent upon any presumed knowledge or reasonable apprehension on the part of the wrongdoer of the probability of such or any particular re-sults. It is only necessary, as to any particular result, that it shall have been a natural consequence of the injury, having regard to the usual course of nature and of cause and effect in a line of unbroken physical causation. That satisfies fully the essential of proximate relation between damages and in-jury, though it does not appear that the wrongdoer had any reasonable ground whatever to assume that such results were likely to follow from his conduct. 1 Sutherland, Damages, § 16; *Brown v. C., M. & St. P. R. Co.* 54 Wis. 342, 354, 11 N. W. 356, 911; *McPeek v. W. U. Tel. Co.* 107 Iowa, 356, 78 N. W. 63. It will be seen that, in studying this subject and applying decided cases, to avoid danger of going astray one must distinguish somewhat between the term "result" as applied to the injury and results as applied to the proximate consequences of the injury.

Applying the foregoing to the facts of this case, can it be said that the failure of appellants to purchase Johnson's to-bacco was directly caused by respondent's failure to season-ably deliver to appellants Johnson's telegram and that such event came about as a natural, ordinary result of respond-ent's conduct, by ordinary, natural, unbroken causation? It seems that such proposition must be resolved in favor of re-

spondent.    Otherwise we would be led to hold that it would
have been in the natural order of things for appellants, had
they received Johnson's telegram seasonably after 7:40 p. m.
on the day after it arrived at respondent's Janesville office,
to have re-opened negotiations with Johnson by making him
a new offer eliminating the element which caused the rejec-
tion of their first offer, to have done so in time to reach John-
son before he sold the tobacco to other parties, and for him
to have accepted the new offer though he was under no obliga-
tion, morally or otherwise, to do so, his telegram being neither
in the nature of an offer to appellants nor an invitation to
them to continue negotiations.    That would be carrying the
limits of consequential damages in a legal sense beyond reason
and authority.    It was within possibilities for events to fol-
low one another in that order to the result suggested, but
something more is necessary than mere possibility to consti-
tute the proximate connection between a wrongful injury and
the ultimate results rendering it a subject for compensatory
damages.

The authorities cited by appellants' counsel come far short
of supporting the contention that the damages sought to be
recovered here are the proximate result of respondent's neg-
ligence.    In *Thompson v. W. U. Tel. Co.* 64 Wis. 531, 25
N. W. 789, there was a sale of property subject to delivery
thereof in time to enable the purchaser to load the same for
shipment by rail.    By negligence of the telegraph company in
transmitting and delivering a message the property did not
reach the prospective purchaser in time for him to consum-
mate the trade.    The difference between such a situation and
the one before us is so obvious that we need not stop to point
it out.    In *Western U. Tel. Co. v. Wilhelm,* 48 Neb. 910, 67
N. W. 870, the terms of an exchange of property were agreed
upon, but by breach of duty on the part of the telegraph com-
pany in transmitting a dispatch calling for the presence of
one of the interested parties with an abstract, the agreement

was not consummated. In *McPeek v. W. U. Tel. Co.* 107 Iowa, 356, 78 N. W. 63, we have quite an extreme case. There the court ruled that whether the loss was a proximate result of the breach of duty complained of was a question of fact, and, it having been solved in the trial court on evidence, the solution would not be disturbed on appeal. There, as here, the suit was by the addressee of the telegram. It was said that his right to recover was not based upon breach of contract, but on breach of duty constituting actionable negligence; that the damages in such a case, unlike in one for breach of contract, are not limited to such as might reasonably have been within the contemplation of the parties, but extended to all injurious results flowing from such act by natural sequence, without the interposition of any other negligent act or overpowering force. The plaintiff had laid a plan for the arrest of a fugitive from justice, which would enable him to earn a reward offered for the capture. He arranged for information to be sent him by telegraph of the occurrence of expected events placing the fugitive within his reach. A dispatch giving such information was delivered to the telegraph company, but by delay in its transmission to plaintiff he was unable to consummate his plan of capture. The sending of the dispatch was the final move to enable the plaintiff to proceed to lay his hands upon the fugitive. In such circumstances it was quite clear that it was at least a question of fact as to whether failure to make the capture was not the proximate result of the telegraph company's breach of duty in delaying the transmission of the dispatch.

Here the delayed dispatch was an adverse termination of a negotiation by which plaintiffs sought to obtain Johnson's tobacco. There was no suggestion in it for a continuance of negotiations. Nothing was to be effected by the delayed dispatch beneficial to appellants. It can easily be seen that the case of appellants is not within the principle of any of the cases cited. A review of the rest of the authorities relied on

would not improve the situation in that regard. In each of the cases specially referred to the breach of duty was in respect to an essential step in an affair the success of which depended upon it. In the one before us the breach of duty was in respect to a closing event in a transaction not calling for or suggesting any further action on the part of either party thereto. Obviously, even if it be true that appellants would have renewed negotiations with Johnson and carried the same on to effect, had they been seasonably informed of the failure of their first effort, it cannot be said that such a course or result would have been in that natural order of things requisite to the proximate relation of damages to breach of duty which is necessary to legal liability therefor.

*By the Court.*—The judgment is affirmed.