COOPER, Appellant, vs. THE VILLAGE OF WATERLOO, Respondent.

*January 17 — February 8, 1898.*

*Municipal corporations: Snow and ice on sidewalk: Injury to traveler:*
*Court and jury.*

Plaintiff, in passing over a portion of a sidewalk in the defendant
village which inclined twelve or fourteen inches in six feet, fell
and was injured. It appeared that four slats had been nailed
across said incline about fourteen inches apart, but that they had
been covered up by snow which had accumulated on the walk;
that sleet or mist during the night preceding, or early on the morn-
ing of, the accident, followed by a slight flurry of snow, had ren-
dered the walk very slippery, but that it had not previously been
in that condition; that ashes had been sprinkled on the walk be-
fore, but none had been sprinkled after, such slippery condition
arose; that the accident happened about 9 o'clock in the morning;
and that plaintiff had passed over the place in question a short
time previous thereto, going in the opposite direction, and knew the
slippery condition of the walk. *Held*, as matter of law, that no
defect in the sidewalk was shown which would render the village
liable for plaintiff's injury.

APPEAL from a judgment of the circuit court for Jefferson
county: JOHN R. BENNETT, Circuit Judge. *Affirmed.*

For the appellant there were briefs by *Bushnell, Rogers
& Hall*, and oral argument by *A. R. Bushnell.*

For the respondent there was a brief by *Geo. W. & H. S.
Bird* and *H. T. Ames*, and oral argument by *Mr. Geo. W.
Bird* and *Mr. Ames.*

CASSODAY, C. J. This action was brought to recover dam-
ages for personal injuries sustained January 17, 1893, by
reason of an alleged defective sidewalk. The answer con-
sists of admissions, denials, and counter allegations, includ-
ing contributory negligence on the part of the plaintiff. At
the close of the trial, the court directed the jury to return a

verdict in favor of the defendant. From the judgment entered upon the verdict so returned, the plaintiff appeals.

It appears that at the time of the accident the defendant was a village of about 1,100 inhabitants; that the street in question was one of the principal streets in the village; that the only alleged defect in the structure of the sidewalk is that, at the place where the accident happened, an apron led from the higher part of the walk down to the lower part of the walk; that this apron was made of planks running lengthwise of the walk, and was six feet wide and six feet long; that the upper end of the apron was from twelve to fourteen inches higher than the lower end, so that the descent in the apron for the six feet was about two inches to the foot; that across this apron were four slats or cleats nailed to the planks constituting the apron, and these slats appear to have been about fourteen inches apart, the lower one being about that distance from the foot of the apron; that such depression in the walk only extended the width of a store; that immediately west of the store was a somewhat corresponding apron, descending the other way; that such depression in the walk had been caused by the street being raised in front of the store, and that the walk had been correspondingly raised east and west of the store, but not in front of the store; that there was no perceptible lateral descent in the apron described; that the plaintiff, who was forty-one years of age, lived upon the same side of this street, a few doors west of the store; that a little before 8 o'clock on the morning of January 17, 1893, she started from her house to go to a wedding at the church, and, in going, passed right over and up this apron without difficulty; that she then noticed that there was ice on the apron, and that it was slippery, smooth, not rough nor uneven, and that there had been a very little sprinkle of snow the evening before; that she returned from the church a little before 9 o'clock in the forenoon; that, when she came to the apron, she was

looking right at it, and saw its condition and the slight flurry of snow on it; that the slats were covered with ice; that, when she was about the middle of the apron, both of her feet slipped at the same time, and she fell and was injured.

The structure of the sidewalk at the place of the accident seems to have been reasonably safe at the time. It would be very unreasonable to require villages or cities to maintain perfectly even walks. The only question as to the alleged defect in the walk worthy of any consideration in this case is as to whether the ice had been allowed to accumulate on the apron to such an extent and for such length of time as to make it a question for the jury whether it was at the time unsafe or reasonably safe. Upon that question, as well as the plaintiff's contributory negligence, the learned trial judge has summarized the facts as favorably to the plaintiff as the evidence will bear, in substance as follows:

The facts in the case are absolutely undisputed. The only question in dispute was whether it was fourteen inches or twelve inches high. If there is any other, I do not know it. Many witnesses have testified that there was mist that night, that made it slippery that night and early on the morning in question; not only slippery, but very slippery, so much so that many intelligent and careful men avoided the sidewalk and walked in the center of the street. It does appear that these slats were filled up, and that the ice and snow upon them prior to this evening was from an inch, perhaps, to an inch and a half thick, and concealed or covered up those ridges made by the slats. But it does not appear, and no witness has testified, that the walk was so very slippery until this morning. And the evidence shows that ashes were sprinkled on the walk before, but that none had been sprinkled on after, this exceedingly slippery condition was caused by the freezing of the sleet and mist the night before. If the defendant were liable at all, it would be not so much because it was slippery, but because it had not put

Cooper vs. The Village of Waterloo.

the ashes on to stop its being slippery in the morning.   One
witness says that he was going home about 11 o'clock the
evening before; that it was not very slippery then; and al-
most every one of the witnesses say that the roads and the
sidewalks were not very slippery the day before, and all
agree, including the plaintiff's witnesses, that it was exceed-
ingly slippery at this time in the morning, and that it had
been rendered so during the night.   It would be holding
too strict a rule to say that municipalities must put ashes
on all the sidewalks in the city before 8 or 9 o'clock in the
morning.   The plaintiff had passed over this apron in safety
going the other way, up the slant instead of down the slant;
and she. says she was looking right at that walk, and saw
and knew that it was very slippery.   I am impressed with
the idea that the plaintiff is not entitled to recover in this
case.   To say that a person walking on an inclined plane
on a slippery place, that is only caused the night before,
when such person knows exactly what it is, and when there
is a possibility for them to avoid it by going in the center
of the street, could recover, would be going further than
the law permits.

   For such reasons the trial court directed a verdict in favor
of the defendant, and we are all clearly of the opinion that
the verdict was properly so directed.   Certainly, there was
a failure to show any such defect in the walk as to take the
case to the jury.   The adjudications of this court upon such
questions are too numerous and too familiar to the profes-
sion to require citation.   Among the more recent decisions
in this court we cite *Salzer v. Milwaukee*, 97 Wis. 471; *Bea-
ton v. Milwaukee*, 97 Wis. 416.

   *By the Court.*— The judgment of the circuit court is af-
firmed.