SEAVER, Respondent, vs. TOWN OF UNION, Appellant.

*January 30—February 18, 1902.*

*Highways: Negligence: Personal injuries: Proximate cause: Con-*
*tributory negligence: Evidence.*

In an action for personal injuries sustained by reason of an al-
leged insufficiency of a highway it appeared, among other
things, that the traveled part thereof, for a distance of about
700 feet, was worn and washed out to a depth of from ten to
twenty inches, forming a cut too narrow for teams to pass with-
out driving partly onto the embankments on either side. Such
condition was well known to the officers of the defendant, and
had existed for more than six months. Between a point 250
feet north and a point 200 feet south of the place of the acci-
dent there was nothing to obstruct the view of a person travel-
ing south. The last safe turn-out for a person traveling south
was 200 feet north of the place of the accident, and for a per-
son traveling north 80 feet south thereof. Plaintiff, who was
familiar with the highway and who had passed over it a short
time before, in traveling south, drove his team, attached to a
sled on which was a top-heavy load, into the cut past the last
north turn-out, and there met another heavily loaded sled. In
order to pass, each was compelled to drive up onto the bank, at
that point thirteen inches high. After passing, plaintiff at-
tempted to turn back into the road at a point where the bank
was sixteen inches high. In doing so his load overturned and
he was injured. Plaintiff failed to observe the other team and
paid no attention to its approach until they met. *Held*, that
plaintiff was guilty of contributory negligence which was the
proximate cause of the injury.

APPEAL from a judgment of the circuit court for Waupaca
county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Action to recover compensation for a personal injury
alleged in the complaint to have been sustained under the
following circumstances: On January 19, 1900, one of the
public highways in the defendant town was insufficient at
a point particularly described, in that, for a distance of about
100 feet south and about 600 feet north of such point, the
traveled part thereof was worn down by travel and by the

washing of surface water to a depth of from ten to twenty inches, forming a narrow channel or cut to which the travel was confined, the cut not being of sufficient width to allow teams to pass by each other without one or both turning out partly upon the embankments on either side of the roadbed. Such condition had existed for more than six months prior to the particular date mentioned and was well known to the officers of the town.   On said day, while plaintiff was traveling south on said road, driving a span of horses drawing a sled upon which was loaded a saw frame and some pieces of machinery, he met a team of horses drawing a loaded pair of bobsleds, traveling north, which team was turned by its driver to its right in an endeavor to surrender, so far as practicable, one half of the traveled part of the way to plaintiff.   There was not room enough for the teams to pass, which compelled plaintiff to turn his team so as to entirely clear the traveled part of the road with his sled.   After the teams passed each other it was necessary, in order for plaintiff to continue on his journey, to turn back into the traveled track, and that while he was in the act of doing so, and was in the exercise of ordinary care, and wholly by reason of the insufficient condition of the highway as indicated, his sled and load thereon were overturned in such a manner as to fall upon his right arm and crush it, and otherwise inflict upon him severe bodily injuries to his damage in the sum of $5,000.

All the facts necessary to fix the liability of the town to compensate plaintiff for his injury, and to enable him to prosecute this action, were alleged.   The answer put in issue the allegations as to the highway being insufficient, and as to the injury to plaintiff having been caused in the manner alleged by him, and set up contributory negligence as a defense.

The evidence established or tended to establish the following as facts:   For a considerable distance both ways from

the point where plaintiff was injured, the traveled part of
the highway was in a cut, not much wider at the bottom
thereof than the space occupied by an ordinary wagon.     A
person coming from the north, after he reached a place 250
feet from where the accident occurred, could all the time
thereafter, as he approached said point, see a team coming
from the south at any place within a distance of 200 feet
south of such point.     The last safe turn-out place to the
right, for a person coming from the north, as he approached
where the accident happened, was about 200 feet from such
point.     There was a side road east of the main track, which
connected with the latter at a point about 125 feet north of
the place of the accident and eighty feet south thereof.     Ex-
cept where the turn-out places were located as stated, for the
whole distance referred to there was a bank on the east side
of the main track, which sloped upward from the near wheel
track to such a height that a person could not turn from the
main track with a team, drawing a loaded sled, sufficient to
allow another such rig to pass, without considerable danger
of his load being turned over.     Especially was that the case
if the person was drawing a top-heavy load.     If a person
so circumstanced succeeded in turning out so as to allow a
team coming from the opposite direction to pass by him, he
had to encounter again the danger of overturning his load
in the act of trying to regain the traveled track.     Plaintiff
was familiar with the situation, having traveled over the road
many times.     There was some new snow on the ground the
day the accident happened, and the conditions were such
that, in attempting to turn out of the track with a loaded
sled to allow a person coming from the opposite direction to
pass, the sled was liable to slide toward the track and ob-
struct it so as to prevent the teams from passing unless one
of the sleds was drawn substantially clear from the track
and upon the side or top of the bank.     Plaintiff and an asso-
ciate passed over the road going north a short time before

he was injured. He had a team of horses hitched to a pair of bobsleds of the ordinary width, the bolsters extending out about as wide as the wheel tracks of a wagon. There was no box on the bolsters, but there was a platform made of planks, the top of which was about twenty-one inches from the ground. The accident happened in the daytime. There was not enough snow to make good sleighing. The purpose of plaintiff in going north was to get a saw frame, which weighed about a ton. It was loaded on the platform of the sled just in front of the hind bolsters, the greatest length of the frame being crosswise. It extended beyond the sides of the platform each way about fourteen inches. The greater part of the weight of the machine was in the top, which was about four feet from the ground after the machine was loaded. It was secured in place on the platform by chains. After it was so secured plaintiff proceeded south and entered that part of the road which was in the cut and has been described. Before he reached the last place where he could turn out to his right as before stated, a team drawing a pair of bobsleds with a load thereon was in plain view, coming from the south. At this time neither driver observed the other or paid any attention to whether he was approaching another team. The driver of the team coming from the south did not see that any one was approaching from the north till he had passed beyond the place where the side road turned off to his right. Plaintiff did not observe that the team was approaching from the south till he had passed by where such side road turned off to his left. Each had ample opportunity to see the other before passing by where he could have turned into the east track. From the point where plaintiff observed the team coming from the south to where the teams met there was no place where either team, particularly plaintiff's, could be safely turned out to allow another to pass by. As the teams came near together, each driver endeavored to turn his team to the right so as to surrender one half of the

traveled track. Plaintiff wholly or nearly succeeded in his effort in that regard, but as the teams attempted to pass each other, the hind bob on the sled from the south swung around and obstructed the way, so he was unable to proceed without turning entirely out of the track, or the driver of the other team doing so, which could not be done, as before indicated, without considerable danger. Plaintiff concluded that it was easier for him to turn his team out upon the bank than for the person coming from the south to do so, and he acted accordingly, succeeding in safely clearing the road and reaching the top of the bank. After going about fifty feet, and after the team from the south had passed by, he endeavored to regain the traveled track, selecting a place where it seemed to him possible to do so. As his team reached the traveled track they turned south therein, and as his sled passed over the brink of the bank it slid toward the edge of the track, and as it reached the track it dropped down into it, stopping suddenly in the side movement and causing his load to overturn. In some way, as the edge of the saw table came in contact with the ground, plaintiff's arm was caught under it and crushed, and he was severely injured. There was considerable conflict in the evidence as to the exact width of the cut at the bottom, and as to heights and distances, and the manner in which plaintiff's arm came to be caught under the edge of the saw table as the load was overturned.

At the close of the evidence appellant's counsel moved the court to direct a verdict of no cause of action, which motion was denied, and due exception was taken to the ruling. The jury rendered the following verdict:

"1. Was the plaintiff injured by the upsetting of his sleigh, and load thereon, at the place in the highway described in the complaint? A. By the Court. Yes.

"2. What was the depth, expressed in inches, of the depression in the traveled track where plaintiff was injured? A. Sixteen inches.

"3. What was the depth, expressed in inches, of the depression in the traveled track where plaintiff turned out of the same?  A. Thirteen inches.

"4. Was there, upon the east bank of the highway, extending north from about the bend in the highway, as shown upon Exhibit C, a traveled track, reasonably safe for public travel?  A. No.

"5. If you answer question 4 'Yes,' then what was the distance from the south end of said traveled track on the east side of the highway north, to the place where the same again first joined the so-called main traveled track?  A.

"6. Could a person in the highway, 250 feet north of the place of the accident, and thence traveling south along the same to the place of the accident, at all times see a team at any place in said highway not more than 200 feet south of the place of the accident?  A. By the Court.  Yes.

"7. How far north of the place where plaintiff turned out on the traveled track was it to the first place where the plaintiff might have, with reasonable safety, turned out on the west side of the highway, so as to have permitted Marcey to pass with safety?  A. 144 feet.

"8. How far north of the place where plaintiff turned out was it to the first place on the east side of the highway, where plaintiff might, with reasonable safety, have turned out and let Marcey pass?  A. Seventy-five feet.

"9. Within a distance of seventy-five feet north of the place where plaintiff turned out of the traveled track, was there at a reasonably safe and suitable place where plaintiff and Marcey could have passed each other?  A. No.

"10. Could the plaintiff have turned upon, and passed over the east track, after he discovered that Marcey had passed over the south end of the east track?  A. No.

"11. Did the plaintiff try or attempt to hold with his hands, the sleigh and machine thereon, from tipping over, and while so employed was he injured?  A. No.

"12. Was the highway at the place in question in an unsafe and defective condition, which approximately caused the accident and injury to plaintiff?  A. Yes.

"13. If you answer question 12 'Yes,' then was the defendant town guilty of negligence in permitting such defective condition of the highway to exist at that time?  A. Yes.

"14. Was the plaintiff guilty of a slight want of ordinary care, which approximately caused, or in any way contributed to, the injuries which plaintiff received? *A*. No.

"15. If the court should be of the opinion that the plaintiff is entitled to recover, at what sum do you assess his damages? *A*. $3,000."

After the coming in of the verdict counsel for appellant moved the court, among other things, to change the answer to the twelfth question from yes to no, and the one to the fourteenth question from no to yes, and for judgment in appellant's favor on the verdict as so corrected. The motion was denied, and due exception was taken to the ruling. Judgment was rendered in favor of the plaintiff upon the verdict and the defendant appealed.

For the appellant there was a brief by *E. L. & E. E. Browne,* attorneys, and *B. R. Goggins,* of counsel, and oral argument by *Mr. Goggins,* and *Mr. E. E. Browne.*

For the respondent there was a brief by *Hutchinson & Hurlbut* and *Cate, Lamoreux & Park,* and oral argument by *B. B. Park.*

MARSHALL, J. Many questions, by proper exceptions to rulings of the court, were preserved for consideration, and were brought to our attention by proper assignments of error and fully discussed by counsel both in the oral and the printed arguments, which in our view of the case are immaterial; therefore, in the statement which we have compiled from the record we have omitted all parts of the history of the litigation not essential to an understanding of the single question upon which the appeal turns. · We shall not discuss the subject of whether the verdict is sustained by the evidence as to the highway being insufficient. It may be assumed, for the purposes of the appeal, that the verdict in that respect is amply justified. Neither shall we discuss any of the numerous assignments of error as to rul-

ings on requests for special findings by the jury other than those embodied in the verdict, or on requests for special instructions not given, or any of the criticisms of the instructions which the court gave, or any of the exceptions found in the record to rulings on evidence. The result of our study of the case is that, without prejudice to the rights of appellant, all of the assignments of error presented and discussed may be left out of consideration, except those presenting the question of whether the evidence conclusively shows that the accident was caused wholly or partly by want of ordinary care on the part of respondent. If that must be resolved in favor of appellant, the motion made in its behalf, at the close of the evidence, for the direction of a verdict, should have been granted; and the motion made after verdict, to change the answers to questions 12 and 14, and to render a judgment in appellant's favor on the verdict as corrected, should have been granted.

After giving the verdict of the jury and the decision of the court due consideration, it seems that the vital question above suggested must be decided in favor of appellant. It is conceded that all the conditions which made the highway unsafe were open to the most casual observation and were fully known to respondent. The evidence shows such to have been the fact beyond reasonable controversy. The nature of respondent's load was such that he must have known that he could not draw it out of the cut and up the slope, which rose some thirteen inches in a distance about the width of his sled, to the plain above, without great danger of the load being overturned. He must have known that if he met a team in the cut he might have to attempt that feat, or the person coming from the south would have to encounter a like danger, in order that the two might pass each other. He was traveling on one of the main highways of the town, one upon which there was considerable travel to his knowledge, by teams with loaded sleds or wagons, and must have

known that one was likely to be approaching from the south at any time. Under such circumstances he passed by a place where he had a good opportunity to turn to his right, and the last such place, without looking to see whether a team was coming from the south. He did not take any such observation till he had proceeded past the last place where he could have turned out safely to his left, and the team coming from the south had passed the last place where it could have safely turned out of the track either way. During all this time the team coming from the south was in plain sight. Plaintiff did not see it because he did not pay any attention to the matter, and was proceeding entirely unmindful of the danger without any circumstance to excuse his neglect. That such conduct is contributory fault, this court has often decided. *Collins v. Janesville,* 111 Wis. 348; *Devine v. Fond du Lac,* 113 Wis. 61. The first step in the chain of circumstances leading up to the injury was plaintiff's heedlessness in going into what, under the circumstances, was an obviously dangerous place. Being in there, he took the chances of trying to extricate himself by hauling his top-heavy load up the slope at the side of the traveled track to the plain above. His attempt to accomplish that feat was an event set in motion, as it were, by his going heedlessly into the place of danger. After he had reached the top of the bank and the team from the south had passed by, he was moved, by his course up to that time, to take the chances of trying to return to the traveled track by driving down the slope, which he did, where the descent was sixteen inches, and where, because of the steepness thereof, his sled was very liable to slide rapidly toward the track as soon as it passed sufficiently over the brink to throw the center of gravity of his load that way, and liable to come to a sudden stop as the left runner struck the track, which would strongly tend to so throw the weight of his load to the left as to cause it to overturn. As a man of ordinary intel-

ligence, all that must have been perfectly plain to plaintiff
if he gave the attention to his surroundings and movements
which, as a person of ordinary care, he ought to have given.
The act of returning to the highway was a natural and prob-
able result of going out of the same. It completed the chain
or succession of events reaching from the first act of negli-
gence mentioned to the unfortunate event, for which re-
spondent seeks compensation of defendant. The legal re-
sult is plain.

It is not often that a case is presented which so perfectly
illustrates the doctrine of proximate cause in the law of
negligence, the importance of it and its applicability to an
action to recover compensation for an injury alleged to have
been caused by the insufficiency of a highway, the same as
to every action grounded on negligence of the defendant.
The immediate cause of plaintiff's injury was the condi-
tion of the highway in that it was in a narrow cut at the
place where the injury occurred, but the proximate cause
thereof was the negligence of respondent in going into the
cut as he did and paying no attention to whether a team
was already in there, approaching from the south, till he
had passed by the last place where he could have safely
turned out. That first act of negligence set all the other events
in motion, each being started by the one which preceded it,
down to the instant of the injury. They were all linked to-
gether in close causal connection, and with all the essentials
of legal responsibility, so that, conceding that the highway
was insufficient, as found, the negligence of respondent in-
tervened and gave the impulse which did not spend itself
till his injury occurred, and which, in a legal sense, at least,
was the responsible cause thereof, or, in any view that can
be taken of the matter, contributed to cause it.

It does not seem that anything need be or can be profitably
added by further discussing this case. The principles of law
involved are all so firmly settled as not to be open to ques-

tion. They have been so often discussed that an opinion should not, it seems, be incumbered by citing authorities in respect thereto. There is no serious conflict, if any, in the matters from which the inferences spring as to respondent's want of care and its causal connection with the injury here received. On the theory that must prevail, in view of the peculiar character of respondent's load—assuming that the highway was as dangerous as the jury found it to be, and that ordinary care required respondent not to thoughtlessly drive into the place, where he knew or must have known he could not safely pass a team coming from the south, without first looking in that direction to observe whether there was one coming when he yet had an opportunity to safely turn out,—all of the findings of fact of the jury, on the subject of whether he was negligent or not, and whether fault on his part contributed to or caused his injury, are against him, except the mere conclusions, which, from the manner in which the verdict is framed, were reached only by reasoning from such favorable findings. The finding as to whether the insufficiency of the highway was the proximate cause of the accident, and the one covering the subject of plaintiff's contributory negligence, are plainly out of harmony with the facts on which they are based. After the jury reached the conclusion that respondent had ample opportunity to see the team approaching from the south, and to avoid meeting it in that part of the cut where neither team could be turned out sufficiently to allow the other to safely pass by, in view of the undisputed evidence that he was perfectly familiar with the road and had a load of a character which rendered any attempt to haul it on a very sidling place especially hazardous, and that he nevertheless passed by the last place where he could safely have turned out, without seeing the team approaching or making any effort to discover if such was the situation, it would seem that it required but an appeal to common knowledge to reach a con-

clusion contrary to the answers given by the jury to questions 12 and 14. Those answers and the other findings and undisputed evidence are so inconsistent with each other, that we must conclude that the jury misunderstood the instructions given by the trial court in regard to the legal essentials of the cause of the accident in order to fix legal responsibility therefor upon the defendant.

This case is of a character where there is great danger of a jury not understanding and properly applying the law unless it is explained to them with considerable care. It seems that the mere use of legal terms, which are plain to one trained in the law, does not always convey the correct idea to a jury of the essentials of proximate cause. Nevertheless, of course, if a trial judge contents himself with a mere statement of the principles of the subject in the language of the law, his duty is so far performed that no prejudicial error can be assigned for want of a more definite explanation thereof. Had the jury understood that it was necessary for them, in determining what was the efficient or real producing cause of the accident and whether respondent was guilty of contributory negligence, to go back from the instant of the injury, step by step, in the chain of causal connection, to the first act which was at the foundation of the mischief, the one which started the chain of events in motion, and name it the proximate cause thereof, understanding that it was essential to such first act being so named for each event in the chain in regular succession to be a natural and probable result of the one that preceded it, and one which a person of ordinary care might reasonably have expected, resulting in an injury to person or property, they would in all reasonable probability have reached the conduct of respondent in negligently going into the place of danger before stopping in their search, and would not have retraced their steps. As it was, they either stopped at or started with the immediate cause of respond-

ent's turning out of the highway, the insufficient condition
thereof at that point for two teams to pass each other. They
did not consider the cause which placed respondent in that
predicament. In their process of reasoning they clearly
either started from the wrong end of the chain, or at a link
therein, a course which is liable to lead to error. A safer
way is to set the mental compass at the injury complained of
and look backward.

We will illustrate what was last said. A person was in-
jured by his horse or carriage coming in contact with an
insufficient condition of a highway while the horse was in
a condition of fright and was uncontrollable by the exercise
of ordinary care on the part of the driver. The immediate
cause of the accident was the insufficiency of the highway,
but that, we can readily see at once, was not the proximate
cause thereof because of the fright of the horse. That,
though not, perhaps, the nearest cause, was a near cause.
But we must discover what started the horse to run away,
since we cannot see that any failure of the driver to regain
control of it intervened to break the causal connection be-
tween the cause of the fright and the final result. Proceed-
ing backward on our course we find an object in the highway,
liable to frighten a horse of ordinary gentleness so that its
driver would lose control of it, without negligence on his
part, and that such object caused the condition of fright and
uncontrollability in the case in question. We cannot stop
yet, however, and call the insufficiency of the highway
caused by such object the proximate cause of the accident.
Looking further, we find that the object which caused the
fright was placed in the highway by the action of the ele-
ments. So if we were to stop with the mere defective condi-
tion of the highway we would be at a mere link in our
chain, and if we were to stop at the cause which made the
highway defective by placing the object therein we would
not reach any responsible cause, especially since the fright

of the horse rendered the driver incapable of doing anything, reasonably, by ordinary care, to avoid the danger at the farther end of the chain. Looking further, we find that the condition of the highway caused by the object which frightened the horse had existed for so long a time that the officers of the town knew of it, or ought to have known of it, for a sufficient length of time to enable them, by the exercise of reasonable diligence, to have removed the danger; that they ought to have done so, and that the town is responsible for their negligence. Now we have found the two ends of a complete chain of responsible causation, one end thereof being the negligence of the town, and the other tied to the unfortunate event, the injury to the driver of the horse. We have the complete succession of events from the negligence of the town to the injury. We have every element of responsible causation. An object in the highway, rendering it insufficient because of the negligence of the town, the fright of a horse of ordinary gentleness and its becoming uncontrollable by reason of such object notwithstanding ordinary care on the part of its driver, a resulting injury before, by the exercise of ordinary care, he could regain control of the horse, an injury to person or property in the lawful use of the highway by a traveler thereon, as a natural and probable result thereof, and the defective highway was a circumstance which any person of ordinary intelligence ought reasonably to have apprehended might probably cause an injury to the person or property of a traveler thereon, the last element springing as a matter of law from the insufficient condition of the highway, whether it is a test thereof or not. *Draper v. Ironton,* 42 Wis. 696; *Peake v. Superior,* 106 Wis. 403; *Rhyner v. Menasha,* 107 Wis. 201; *Mauch v. Hartford,* 112 Wis. 40. It is easy, it seems, to apply that illustration to this case. It follows closely numerous cases that may be found in the books, and covers the principles of proximate cause in the law of negligence as they have

been repeatedly laid down. *Houfe v. Fulton,* 29 Wis. 306; *Jackson v. Bellevieu,* 30 Wis. 250; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348; *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 279; *McFarlane v. Sullivan,* 99 Wis. 361.

*By the Court.*—The judgment is reversed and the cause remanded with directions to change the answer to question 12 of the special verdict from yes to no, and the answer to question 14 from no to yes, and to render judgment upon the verdict as so corrected in favor of the defendant, dismissing the case with costs.