KITTER, Special Administratrix, Respondent, vs. LENARD, Defendant: CHEEVER-TOMLINSON LUMBER COMPANY and others, Appellants.

*April 12—June 24, 1940.*

412

For the appellant Northern Pacific Railway Company the cause was submitted on the brief of *Hanitch, Johnson, Fritschler & Barstow* of Superior.

For the appellants Cheever-Tomlinson Lumber Company and Hardware Mutual Casualty Company there were briefs by *Hughes & Anderson* of Superior, and oral argument by *C. J. Hughes.*

For the respondent the cause was submitted on the briefs of *Crawford & Crawford* of Superior.

The following opinion was filed May 7, 1940:

FRITZ, J. David Kitter was killed in the city of Superior at 11 a. m. on August 25, 1938, upon being struck by an automobile operated by the defendant, John Lenard, Jr. Kitter was in a group of persons on a wooden sidewalk, which was four inches above and parallel to the south edge of the concrete pavement of a roadway which was thirty feet wide. This roadway extended for a distance of forty-two feet from Oakes avenue on the east to the base of a planked roadway three hundred feet long up the east approach to the concrete roadway of a viaduct which was about eight blocks long. Along and separating the planked roadway of the approach from the sidewalks, there was a curb or wheel guard eighteen or twenty inches high and consisting of a 6"x18" timber set on a plank. But there was no curb between the sidewalks and the concrete roadway, which was east of the planked roadway, and an eight-inch space between the south edge of the concrete and the sidewalk was merely filled with ground. There was a ten per cent grade up the planked roadway on the approach to the roadway on the viaduct, which was thirty feet high. Because of that grade, eastbound travelers on the viaduct could not see down the roadway on the approach until they were close to its crest.

Preceding the injury to Kitter it had been raining and drizzling and the roadway became so wet and slippery that a

car which Laurence Olson was driving eastward down the approach skidded from the south to the north half of the roadway when Olson applied his brakes to check his speed because a car ahead of him slowed down to turn north on Oakes avenue. The left front wheel of Olson's car struck the left rear wheel of a loaded truck owned by the defendant, Cheever-Tomlinson Lumber Company (hereinafter called the "Lumber Company"), which Arthur Peterson was driving westward at twelve to fifteen miles per hour on the north half of the planked roadway. As a result of the collision the right rear wheel of the truck was jammed diagonally against its right spring and also against the north curb and its drive shaft was disconnected so that the truck could not be moved without the aid of a wrecker. The truck came to a stop facing south-westerly eighty or ninety feet from the base of the planked roadway, and probably over one hundred fifty feet east of the crest of the approach, although plaintiff claims that distance was only about one hundred and eighteen feet. Olson's car came to a stop, facing west or northwest, about forty-five or fifty feet east of the truck, and at most it did not extend over three to four feet onto the south half of the roadway. Peterson found that he could not move the truck with its own power, and he walked to Olson's car and spoke to him. Many persons gathered and stood on the roadway and sidewalks near the truck and Olson's car.

Within twenty to thirty minutes, as plaintiff claims,—or ten to fifteen minutes, according to some of the defendants' witnesses,—after the first collision, the defendant, John Lenard, Jr., came driving eastward over the viaduct at a speed which he testified was twenty to thirty miles per hour, but which, according to a number of witnesses, was as high as forty to fifty miles per hour. Lenard also testified that he was a "couple of feet" west of the crest of the approach when he first saw the truck and Olson's car and the persons in the roadway, and that to avoid running into the people he applied

his brakes and his car began to skid. Either while, or just before or after passing the truck, the rear end of Lenard's car skidded to the left and halfway around and then continued to skid backward down the south half of the planked roadway without colliding, however, with either the truck or Olson's car. But the hub of the left rear wheel of Lenard's car struck the wood timber of the south curb, and continued skidding and bounding along it until, as it passed the end thereof, the car moved backward onto the south sidewalk and there tipped over and injured Kitter and others.

The jury found that there was no negligence on the part of Lenard in respect to either the speed at which he operated the car or his management and control thereof; and these findings were approved by the court in passing upon the motions after verdict, and adjudging the dismissal of the complaint and cross complaints against Lenard. On their appeals from the judgment, the Lumber Company and the Northern Pacific Railway Company (hereinafter called the "Railway Company") contend that the evidence established conclusively that Lenard was negligent in respect to the speed at which he operated the car and that the court should have so held as a matter of law. These contentions must be sustained. In his testimony at the trial Lenard admitted that he was driving at a speed of twenty-five to thirty miles per hour at the time in question, and he had told a policeman that his speed was thirty-five miles per hour. The speed limit for operating any vehicle upon the viaduct was, however, only fifteen miles per hour, by reason of a sign, which limited the speed to that rate per hour, and which was posted in accordance with the provision in sec. 85.41 (2), Stats., that,—

"It shall be unlawful to operate any vehicle upon any structure mentioned in subsection (1) at a speed which is greater than the maximum speed which can be maintained with safety thereto when such structure is sign-posted as provided in said subsection."

Furthermore, Lenard testified that he could not see anything which was on the approach to the viaduct until he was within a "couple of feet" of it; and that driving at his admitted rate of speed (*i. e.* twenty-five to thirty miles per hour), he could not stop his car in that distance or even in thirty to forty-five feet on the wet surface of the viaduct. Consequently, he was also clearly violating the provision in sec. 85.40 (5), Stats., that,—

"In traversing curves and grades where the operator does not have a clear view of approaching traffic upon the highway, the speed of such vehicles shall not be greater than that which will permit him to stop his vehicle within one half the range of his vision."

By reason of these violations of the statutes by driving at an excessive speed Lenard was negligent, as a matter of law, and the court erred in not ruling to that effect and instructing the jury accordingly. If that had been done, the jury would have been well warranted in finding that Lenard's negligence in respect to speed was a cause of Kitter's injury; and that, for reasons hereinafter stated, it was the only negligence which was established by the evidence to be a cause of his injury. Because of the court's error in the respect stated, it was also error to adjudge the dismissal of the cross complaints by the Lumber Company and the Railway Company against Lenard, Jr., for contribution.

The jury found there was causal negligence on the part of the Lumber Company in that its truck extended south of the center line of the planked roadway before and when Lenard's car passed it, and, because of its position after the collision with Olson's car and until Kitter's injury, the approach to the viaduct was rendered unsafe to pedestrians and eastbound motor vehicle traffic; in leaving the truck upon the viaduct longer than temporarily and not removing it from the viaduct before Kitter's injury; and in not giving warning or causing

warning to be given to eastbound vehicular traffic as to the condition on the viaduct at and about the disabled truck.

On the other hand, the Lumber Company contends that no part of its truck extended onto the south half of the roadway, nor was it rendered unsafe thereby; that it was not negligent in leaving the truck temporarily on the roadway, or in not removing it prior to Kitter's injury, or in failing to warn eastbound vehicular traffic; and that even if it was negligent in any of these respects, its negligence was not a proximate cause of Kitter's injury. The Lumber Company's claim that no part of its truck was over the center line of the roadway is supported by almost all of the evidence on that issue, and particularly by the newspaper print of a photograph taken before the truck was moved with a wrecker. However, even if the truck did extend, as plaintiff claims, eleven inches, or even two to three feet further over the center line of the roadway, that did not render the eastbound traffic lane unsafe for Lenard's car to pass, nor was that a cause of the skidding and his loss of control of his car. He testified that when he applied the brakes he did not do so because of the position on the roadway of either the truck or Olson's car or to avoid striking either of them. On the contrary, he applied his brakes because of the crowd of people around the cars, and in so far as the truck is concerned, there was still available for eastbound vehicles the width of at least twelve feet; and that there was ample space is shown conclusively by the fact that the truck was passed safely by a preceding as well as Lenard's car, even though the latter, while approaching and passing, skidded and zigzagged, and its rear end swung around to the left until it struck the south curb. In view of these facts, it appears conclusively that the position in which the truck was did not render the south half of the roadway unsafe for eastbound vehicular traffic, and that consequently Peterson was not negligent in leaving the truck temporarily on the roadway, or in failing to remove it or warn eastbound traffic before the

injury to Kitter. At all events, none of the alleged defaults on the part of the Lumber Company in these respects can be held to constitute a proximate cause of Kitter's injury, inasmuch as the available clearance of at least twelve feet was ample for even Lenard's skidding and revolving car to pass safely; and, as the truck was at least one hundred and eighteen feet east of the crest of the approach, there was clearly ample opportunity for Lenard to observe the position of the truck and the people on the roadway in time to reduce the unlawful speed at which he was approaching and bring his car to a stop, instead of having it continue to skid three hundred feet to the place where Kitter was injured.

Lenard's negligence by reason of his excessive and unlawful speed was clearly a new, independent, intervening and efficient cause, which was not a consequence of any act or omission for which the Lumber Company was legally responsible, or which was under its control or ought to have been foreseen by the exercise of reasonable diligence on its part; and except for Lenard's unlawful speed the injurious consequences to Kitter would not have happened. Under these circumstances the injurious consequences to Kitter are too remote from any of the alleged negligent acts or omissions on the part of Peterson to constitute them the basis for the recovery of damages for Kitter's death from the Lumber Company. As the court said in *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 155, 103 N. W. 271,—

"Whenever a new cause (independent intervening circumstance) intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequences would not have happened, then such injurious consequences must be deemed too remote to constitute the basis of a cause of action." *Byerly v. Thorpe,* 221 Wis. 28, 33, 265 N. W. 76.

See also *Huebner v. Fischer,* 232 Wis. 600, 288 N. W. 254; *Umlauft v. Chicago, M., St. P. & P. R. Co.* 233 Wis. 391, 289 N. W. 623; *Central Wis. T. Co. v. Chicago & N. W. R. Co.* 232 Wis. 536, 287 N. W. 699; *Rusczck v. Chicago & N. W. R. Co.* 191 Wis. 130, 135, 210 N. W. 361; *Hendley v. Chicago & N. W. R. Co.* 198 Wis. 569, 225 N. W. 205; *Seaver v. Union,* 113 Wis. 322, 89 N. W. 163. It follows that the court erred in denying the motions of the Lumber Company and its insurer for a directed verdict and to change the jury's findings as to causal negligence on the part of the Lumber Company by finding in lieu thereof that there was no such negligence on its part, and for judgment in its favor upon the verdict as amended.

The jury by answers in its special verdict also found that the Railway Company failed to maintain the viaduct approach as safe as the nature of the premises would reasonably permit for the usual and customary traffic and use; and failed to exercise ordinary care to maintain the approach as safe as the nature of the premises would reasonably permit for the traffic, use, and situation present when Kitter was injured; and that these failures caused Kitter's injury. The Railway Company contends that there is no liability on its part because the concrete roadway from Oakes avenue to the planked roadway of the viaduct approach was laid for the city of Superior in 1919, under a contract made between it and a contractor, pursuant to plans and specifications adopted by the board of public works and common council which provided for paving and curbing on Oakes avenue and at street intersections, but did not provide for any curb along the forty-two-feet-long concrete roadway at the base of the viaduct approach; that the Railway Company had no authority or right to change those plans and specifications of the city and was not required to construct a curb at the place in question; and that its failure to have a curb at that place did not constitute a breach or violation of any duty on its part. On the other hand, plaintiff

contends that a resolution adopted by the common council of the city in November, 1907, required the Railway Company at its expense to construct and maintain the viaduct together with the necessary and proper approaches thereto; that the Railway Company did construct the viaduct prior to 1918; and that for its failure in the constructing and maintaining of it in an adequate and safe manner the Railway Company is liable under sec. 195.27, Stats., and also the safe-place statutes, secs. 101.06 and 101.01 (12), as well as under sec. 81.15, Stats.

We find it unnecessary to pass upon most of these contentions on the part of the plaintiff for the reason that there does not appear to be any proof in the record that the Railway Company was ever required to or did construct or maintain either the concrete roadway, which connects Oakes avenue with the planked roadway on the viaduct approach, or any curb between the concrete roadway and the adjacent sidewalk. Neither does there seem to be any proof that this roadway and sidewalk constituted or were ever considered part of the viaduct or the approach thereto which the Railway Company was required to construct and maintain under the resolution adopted in November, 1907. There is merely testimony of a draftsman employed in the bridge department of the Railway Company at the time of the trial that he knows that the Railway Company participated in the construction of the viaduct prior to 1918; but in his testimony there is nothing in relation to the roadway and sidewalks which are between Oakes avenue and the planked roadway of the approach. Although the resolution adopted in November, 1907, required the Railway Company to construct the viaduct with necessary and proper approaches, there is nothing stated therein to show where the approach in question was to begin; and that the Railway Company was not considered by the city to be under any obligation or duty to construct or maintain the roadway or a curb from Oakes avenue to the planked roadway of the viaduct approach is evident from the apparent practical con-

struction in relation thereto disclosed by the following official proceedings and acts of the city.

In April, 1919, the common council adopted a resolution to improve and pave Oakes avenue by grading or regrading and resetting curb where necessary and by laying a thirty-feet-wide pavement "or for such width as the board of public works shall fix and determine; . . ." and this resolution directed the board of public works to prepare specifications for making the improvement. Thereafter the city and a contractor entered into a contract for making the improvement in accordance with plans and specifications which had been prepared by the board of public works and approved by the council, and which, in addition to requiring the contractor to reset curbing and lay pavement on Oakes avenue, required the contractor to construct at the intersection of Oakes avenue and Belknap street (which is the street on which the viaduct is located) a concrete roadway thirty feet wide and extending forty-two and one-half feet westward from Oakes avenue. That is the concrete roadway which connects the planked roadway on the viaduct approach with Oakes avenue. But the plans and specifications pursuant to which that concrete roadway was constructed for the city do not provide for or require any curb along the roadway.

It follows that as there is no basis in the evidence for holding that the Railway Company was under any obligation or duty to construct or maintain a curb or wheel guard at the place in question, the court erred in denying its motions for a directed verdict and for judgment in its favor notwithstanding the verdict; and that in so far as the judgment provides for a recovery by plaintiff from the Railway Company and the Lumber Company, the provisions thereof must be reversed with directions that in lieu thereof the judgment shall provide for the dismissal of the action against them.

*By the Court.*—Judgment reversed in so far as it relates to the defendants Northern Pacific Railway Company,

Cheever-Tomlinson Lumber Company, and Hardware Mutual Casualty Company; and cause remanded with directions to enter judgment in lieu thereof dismissing the action against them.

A motion for a rehearing was denied, with $25 costs, on June 24, 1940.