SAMPSON, by Guardian *ad litem,* and another, Plaintiffs and Respondents, vs. ANDREWS and another, Defendants and Appellants: JOEL and another, Impleaded Defendants and Respondents. [Case No. 150.]

RED TOP CAB COMPANY, INC., Plaintiff and Respondent, vs. ANDREWS and another, Defendants and Appellants: JOEL and another, Impleaded Defendants and Respondents. [Case No. 151.]

*January 19—February 15, 1949.*

The cause was submitted for the appellants on the brief of *Benton, Bosser, Becker, Parnell & Fulton* of Appleton, and for the respondent George R. Sampson on the brief of *Bradford, Derber & Gabert* of Appleton, and for the respondents E. S. Joel and American Automobile Insurance Company on the brief of *Chadek, Cornelisen, Denissen & Farrell* of Green Bay.

HUGHES, J. On February 14, 1947, shortly before 5:30 a.m., the plaintiff George Sampson was operating a cab of the Red Top Cab Company in a westerly direction on East South River street in the city of Appleton. The cab skidded and came to rest in the south ditch atop a water hydrant, headed a little north of northeasterly. Sampson was unable to move the car by his own efforts, and after several attempts

called his employer, who in turn called E. S. Joel, operator of a wrecker service.

When Joel arrived at the scene he and Sampson tried five or six times to release the cab by pulling from both front and rear and with Sampson lifting. These efforts likewise were unsuccessful. The defendant Joel thereupon lined his wrecker up on the north side of the street, facing either northeasterly or easterly, and with the rear of the wrecker about ten feet from the front of the cab. He then took a five-eighths-inch cable which came off the wrecker over a hoist and pulley, and attached it to the front of the cab. When Sampson observed the pickup truck of the defendant Andrews approaching from the east he called Joel's attention to it. Andrews attempted to pass between the wrecker and the cab, hit the cable, apparently slid along it into the cab, knocking it against Sampson who was bowled over on his back to the ground, sustaining the injuries for which he seeks damages. There were no flares or other emergency lights set out by Joel and no flasher on his wrecker.

On the foregoing general outline of the events leading to the accident there is no substantial dispute. Practically all of the testimony covering other facts was in sharp conflict.

The plaintiff and Joel testified that the wrecker was headed north-northeast and that it had headlights, a red light on top of the cowl, two yellow lights on the front fenders, taillights, and two floodlights trained on the cab, all burning; that the cab had its headlights, taillights, and dome light all lighted. Sampson testified that he saw the Andrews car from the time it was two to two and a half blocks to the east and that he waved a flashlight and Joel waved his arms in an attempt to flag it down; that he was unable to judge its speed; that Andrews set his course to go between the cab and the wrecker, and that the cable was then attached to the front of the cab about a foot off the ground and from there went up diagonally to the crane.

Joel testified that he first saw the Andrews truck when it was sixty feet away; he later corrected this testimony by stating that it was a block away; that he could judge its speed within five to seven miles of accuracy and that in his opinion it was traveling thirty-five to forty miles per hour; that it did not slow down before the collision. On cross-examination he testified that he could not swear that the bright headlights on the wrecker were lighted, but if they were not, the dim lights were; that the cable lay on the ground in front of the cab.

Andrews and his wife testified that they approached the wrecker at a speed of twenty miles per hour, slowing to ten or fifteen as they neared the lights of the wrecker which was in their lane; that Andrews then turned to his left to go between the two sets of headlights and that after passing the lights of the wrecker they were confronted with the cable then about four feet ahead of their truck; that the only lights visible to them were the two sets of headlights; that the floodlights aimed to the rear of the wrecker were turned on by Joel after the collision.

The jury absolved plaintiffs of negligence in being in the road, and found that Andrews was negligent with respect to (a) speed, (b) lookout, and (c) control and management, and that the first two elements were causal and the third was not. It also found that Joel was negligent with respect to giving adequate warning to the oncoming traffic from the east and that his negligence was causal. The jury apportioned the negligence seventy-five per cent to Andrews and twenty-five per cent to Joel.

Upon motions after verdict the trial court refused to change the jury's finding as to Joel's negligence, but did change the answer as to whether such negligence was a proximate cause of the collision from "Yes" to "No." The result was to relieve the impleaded defendant and his insurance carrier from contribution.

There was testimony of one Peotter that it is common practice of precaution to have a wrecker equipped with a blinker light on its top visible from both front and rear, and to set out flares, fusees, or kerosene pots several hundred feet away from the stalled truck. It appears clear that there was sufficient evidence from which the jury could find that the impleaded defendant was negligent in attempting the operations, and that the trial court was right in not disturbing the jury's finding in this respect.

We are unable to ascertain upon what ground the trial court changed the answer of the jury to the question of causation. In its decision it says:

"In the first place, the negligence of Andrews, as stated previously, was an intervening act of a third person which could not be chargeable to the defendant, Joel. In the second place, the liability of Joel to Sampson was of an entirely different nature than the duty owing by Andrews to Sampson. This is not a case for contribution so far as Andrews and Joel are concerned."

If the parking of an automobile improperly upon a highway is negligence constituting a concurring cause with the negligence of an operator of a moving vehicle which collides with it, *Weir v. Caffery* (1945), 247 Wis. 70, 18 N. W. (2d) 327; *Guderyon v. Wisconsin Telephone Co.* (1942), 240 Wis. 215, 2 N. W. (2d) 242, then surely the running of a cable between two parked vehicles so as to obstruct travel over the entire width of the highway without taking reasonable and proper means to warn the traveling public, is a continuing negligence and a cause of the resulting collision.

If the cable had been plainly visible or if it could be said that the defendant Andrews should have anticipated its presence, then his continuing ahead regardless of the danger might be said to be an independent intervening cause. Under all of the circumstances of this case considered most favorably to the defendant Andrews, we conclude that the jury was

justified in finding that the negligence of both Andrews and Joel were concurrent causes of the collision and resulting damages.

Defendant Joel relies upon *Kitter v. Lenard* (1940), 235 Wis. 411, 291 N. W. 814, and *Schultz v. Brogan* (1947), 251 Wis. 390, 29 N. W. (2d) 719.

In *Kitter v. Lenard, supra,* a truck and an automobile had collided and become engaged. They were occupying one half of the road and a slight portion of the other half, but leaving ample room to pass on the highway. A group of curious bystanders had gathered on the street and sidewalks. The defendant Lenard came over the crest of a viaduct one hundred eighteen to one hundred fifty feet east of the first vehicle at an unlawful speed, applied his brakes, lost control of his car, and skidded into the parked truck and beyond, where his car tipped over fatally injuring the plaintiff's intestate, who was one of the spectators.

Because the speed limit on the viaduct was fifteen miles per hour and the defendant Lenard was traveling thirty-five to fifty miles per hour, and because he was unable to stop his vehicle within one half the distance he was able to see as he crossed the crest of the bridge, but instead skidded three hundred feet to the point where Kitter was struck—the court held that his was an intervening and independent negligence which solely caused the accident. The court also found that Lenard had applied his brakes not because of the position of the vehicles, but because of the presence of the crowd about the vehicles. The accident occurred at 11 a.m. The case has no application to the facts before us.

The accident in the case of *Schultz v. Brogan, supra,* occurred at 1:30 a.m., and was the result of a defendant skidding into persons standing to the rear of a parked automobile. In exonerating the owner of the parked car from causal negligence, the court pointed out that his negligence consisted of leaving only fourteen feet of concrete instead of fifteen, as

required by statute, and that the accident resulted when the defendant Brogan, having partially applied his brakes, with the intention of passing, noticed people standing in the lane of traffic opposite the parked car and then jammed his brakes to stop. The space through which Brogan was to operate was sufficiently wide to admit him. The sole cause of stopping was its obstruction by pedestrians. The situation would have been unchanged if fifteen feet had been available instead of fourteen. The court therefore held that there was no causal connection between the illegal parking and the injury.

Defendant Andrews contends that there was no evidence to warrant the jury's finding that the plaintiff suffered an aggravation to a hernia which existed before the accident. The testimony was in conflict. Plaintiff testified that he had had no trouble of any kind before the accident and that after the accident his "stomach" bothered him. The defense contended that he had submitted to corrective surgery to make his admission into the air force possible. The jury heard the testimony and the inferences to be drawn were for it.

*By the Court.*—That portion of the judgment in case No. 150 which is in favor of the plaintiffs is affirmed. The remaining portions of both judgments, dismissing defendants' cross complaints for contribution, are reversed and the causes remanded with directions to enter judgments in favor of defendants against the impleaded defendants for contribution.